EDWARD R. REINES (Bar No. 135690)
edward.reines@weil.com
DEREK C. WALTER (Bar No. 246322)
derek.walter@weil.com
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA  94065
Telephone:  (650) 802-3000
Facsimile:  (650) 802-3100

Attorneys for Plaintiff
ILLUMINA, INC. AND ILLUMINA
CAMBRIDGE LTD.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| ILLUMINA, INC.<br>ILLUMINA CAMBRIDGE LTD.,<br><br>              Plaintiffs,<br><br>       v.<br><br>BGI GENOMICS CO., LTD.,<br>BGI AMERICAS CORP.,<br>MGI TECH CO., LTD.,<br>MGI AMERICAS, INC., and<br>COMPLETE GENOMICS INC.,<br><br>              Defendants. | Case No. 3:19-cv-03770-WHO<br><br>**PLAINTIFF'S OPPOSITION TO BGI GENOMICS CO., LTD'S MOTION TO DISMISS UNDER FRCP 12(B)(5) & 12(B)(6)**<br><br>Date: September 4, 2019<br>Time: 2:00 p.m.<br>Courtroom: 2, 17th Floor<br><br>The Honorable William H. Orrick |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ............................................................................................................. 1

II. STATEMENT OF FACTS ............................................................................................... 2

III. LEGAL STANDARDS ..................................................................................................... 3

    A. Service of Process Under the FRCP ..................................................................... 3

    B. Evaluation of Motions Under Rule 12(b)6 ............................................................ 4

IV. BGI LTD.'S 12(B)(5) MOTION SHOULD BE DENIED BECUASE THE FEDERAL RULES PRECLUDE THE RELIEF IT SEEKS ................................................................ 5

V. ILLUMINA'S DIRECT INFRINGEMENT ALLEGATIONS AGAINST BGI LTD. EASILY SATISFY THE PLAUSIBILITY STANDARD ................................................ 6

VI. CONCLUSION .................................................................................................................. 7

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION**

The motion to dismiss brought by Defendant BGI Genomic Co., Ltd ("BGI Ltd." or "Defendant") is even less meritorious and more wasteful of party resources than the parallel attempt by all BGI Defendants to avoid liability for inducing and contributing to the infringement of others. BGI Ltd. cites two grounds for dismissing Illumina's complaint (1) alleged insufficient service of process under Rule 12(b)(5) and (2) failure to state a claim for direct infringement under Rule 12(b)(6). Neither argument has any merit.

With respect to the Rule 12(b)(5) argument, the good-faith and eminently curable alleged defect in service that Defendant relies upon provides no basis for dismissing Illumina's complaint. BGI Ltd.'s motion would be premature even if it were a domestic corporation because the Federal Rules grant plaintiffs a minimum of ninety days to effect service on domestic defendants. Since BGI Ltd is, by its own admission, a foreign corporation that it argues cannot be served in the United States, its motion is baseless because controlling Ninth Circuit precedent holds that there is ***no*** time limit for effectuating service on a foreign defendant. As a result, BGI Ltd. has no cognizable claim for relief under Rule 12(b)(5), and its motion should be denied on that basis.

Even if BGI Ltd. did have a colorable claim under Rule 12(b)(5), the Court should exercise the ample discretion the Federal Rules provide with respect to service issues and order BGI Ltd. to accept service of the complaint through its counsel or one of its U.S.-based affiliates pursuant to Rule 4(f)(3). There is no reason that Illumina should have to engage in the costly, time-intensive process of service under the Hague Convention when BGI Ltd. publicly touts its U.S. presence, does not contest the Court's jurisdiction, is represented by counsel that could accept service, and plainly has notice of the complaint.

BGI Ltd.'s 12(b)(6) ground is equally meritless. The complaint includes express allegations that BGI Ltd. has directly infringed by either performing the steps of the patented methods at the BGI facility in San Jose, or directing other BGI entities in the United States to engage in this infringing

conduct.[1] Nothing more is required to state a claim for direct infringement. BGI Ltd.'s 12(b)(6) motion should be denied as well.

## II. STATEMENT OF FACTS

Plaintiffs filed this lawsuit on June 27. The complaint (Dkt. No. 1) asserts two patents, U.S. Pat. No. 7,566,537 ("the '537 Patent") and 9,410,200 ("the '200 Patent," collectively with the '537 Patent, "the asserted patents") against BGI Ltd. and four other members of the BGI Group, alleging that, among other things, BGI Ltd. and its co-defendants have directly infringed the asserted patents by "importing infringing sequencers" and "using them in its San Jose, California facility." Dkt. No. 1 ¶ 1. With respect to BGI Ltd. specifically, the complaint alleges, among other things, that:

(a) "BGI Ltd. manages the infringing activity in California by controlling the Defendants and, directly and indirectly, funding, developing, marketing, promoting and operating the infringing sequencing systems" (Dkt. No. 1 ¶ 20);

(b) "BGI Ltd.'s website represents that it has multiple locations in California, including San Francisco, San Jose, Los Angeles, and San Diego" (*id.* ¶ 20.a);

(c) "BGI Ltd. has failed to resist the temptation of importing its infringing technology into the large United States market and has done so in the face of the '537 Patent" (*id.* ¶ 48, *see also id* ¶ 119 (making same allegation with respect to the '200 Patent)); and

(d) "BGI Ltd. has directly infringed and continues to directly infringe the '537 Patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, because it is responsible for the use of MGISEQ and BGISEQ products in the United States. Specifically, BGI Ltd. or those for whom it is responsible have used at least the MGISEQ-2000 and BGISEQ-500 in its San Jose, California facility. BGI Ltd. controls and is responsible for, with the other Defendants, directing the installation of the MGISEQ and BGISEQ products at the San Jose, California facility." *Id* ¶ 49*; see also id.* ¶ 120 (making same allegation with respect to the '200 Patent).

The complaint also alleges that all defendants, including BGI Ltd., (1) "directly infringe

---

[1] This is distinct from BGI Ltd.'s inducement of the infringement of other BGI entities, discussed in Illumina's concurrently filed opposition to Defendants' motion to dismiss Illumina's indirect infringement claims.

pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, at least claim 1 of the '537 Patent by using the MGISEQ and BGISEQ sequencers and related reagents within the United States," (2) "have used the MGISEQ and BGISEQ sequencers in the United States as part of their preparations to enter North American markets, specifically in connection with research, development, testing, and/or promotional activities related to the products," and (3) "use the MGISEQ and BGISEQ products and related reagents in the United States whenever they install these types of sequencers at a United States facility," which "includes the BGI facilities in San Jose, California." *Id.* ¶ 38; *see also id.* ¶ 42 (making the same allegation with respect to the '200 Patent).

After filing the complaint, Plaintiffs promptly attempted to serve BGI Ltd. via personal service on Yiwe He, an individual that Plaintiffs believed in good faith was and remained an officer of BGI Ltd. based on public evidence such as Mr. He's LinkedIn page, which states that he is "Global Head of R&D at BGI." Reines Decl., Ex. A. In view of Mr. He's declaration asserting that he ceased working for BGI in March 2019 (Dkt. No. 27-1), Plaintiffs have taken steps to effectuate service on BGI Ltd. through the Hague Convention process.

### III.   LEGAL STANDARDS

#### A.   Service of Process Under the FRCP

FRCP 4 governs procedure for service of process. Relevant to this motion, Rule 4(h)(2) provides that "a domestic or foreign corporation" may be served "at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)." FRCP 4(h)(2). Rule 4(f), in turn, provides a number of different permissible methods for serving individuals in foreign countries, including "internationally agreed means of service…such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." FRCP 4(f)(1). The Rule also authorizes service "by other means not prohibited by international agreement, as the court orders." FRCP 4(f)(3).

With respect to time limits for service, Rule 4(m) states that "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." FRCP 4(m). Importantly, however, the Rule also includes an express

exception from the 90-day requirement for those provisions relevant to foreign service. *Id.* ("This subdivision (m) does not apply to service in a foreign country under Rule 4(f), 4(h)(2), or 4(j)(1), or to service of a notice under Rule 71.1()(3)(A)."). The Ninth Circuit has construed this provision to eliminate any formal time requirement for service of foreign defendants. *Lucas v. Natoli*, 936 F.2d 432, 432 (9th Cir. 1991) ("We agree with the district court that the plain language of Rule 4(j) makes the 120–day service provision inapplicable to service in a foreign country, and so hold.");[2] *Rudolph v. UT Starcom, Inc.*, No. C 07-04578 SI, 2009 WL 248370, at *3 (N.D. Cal. Feb. 2, 2009) ("Rule 4(m) specifically exempts service on individuals in foreign countries pursuant to Rule 4(f) from the 120–day time limit.").

More broadly, the Supreme Court has emphasized that the rules pertaining to effective service are to be construed liberally, with a focus on the notice function that service is intended to provide. *See Henderson v. United States*, 517 U.S. 654, 672, (1996) (rejecting a strict construction of service requirements because "the core function of service is to supply notice of the pendency of a legal action, in a manner and at a time that affords the defendant a fair opportunity to answer the complaint and present defenses and objections"); *see also Whidbee v. Pierce Cty.,* 857 F.3d 1019, 1023 (9th Cir. 2017) ("Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint."). Contrary to BGI Ltd.'s assertion in its motion that insufficient service deprives the court of jurisdiction (Dkt. No. 27 at 3), the Supreme Court has stated that "[s]ervice of process…is properly regarded as a matter discrete from a court's jurisdiction." *Henderson*, 517 US at 671.

## B.   Evaluation of Motions Under Rule 12(b)6

The relevant inquiry in evaluating a motion to dismiss brought under Rule 12(b)(6) is not whether the plaintiff will succeed on the merits, "but whether [the] complaint was sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521. A cause of action may not be dismissed if the pleading describing it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (citation omitted). "A plaintiff meets this requirement if it pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869

---

[2] In the earlier version of the FRCP before the *Lucas* court, Rule 4(j) contained substantially the same language as current Rule 4(m).

F.3d 1372, 1376 (Fed. Cir. 2017).  In evaluating a motion brought under Rule 12(b)6), a court must "draw all reasonable inferences in favor of the non-moving party."  *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1340 (Fed. Cir. 2012).

## IV. BGI LTD.'S 12(B)(5) MOTION SHOULD BE DENIED BECUASE THE FEDERAL RULES PRECLUDE THE RELIEF IT SEEKS

Rule 4(m)'s 90-day window for perfecting service of process is not "an outer limit subject to reduction" but instead operates as "an irreducible allowance."  *Henderson*, 517 U.S. at 661.[3] Accordingly, BGI Ltd.'s 12(b)(5) motion would be premature even if BGI Ltd. were a domestic corporation.

Because BGI Ltd. is a foreign corporation and, according to Plaintiff, not subject to service in the United States, BGI Ltd.'s claim for relief is completely untenable and its motion must be denied. The Ninth Circuit's interpretation of the provisions of Rule 4 that pertain to foreign service could not be more clear—there is ***no*** time limit for perfecting service overseas, and thus a complaint cannot be dismissed under Rule 12(b)(5) for failure to timely effectuate service on a foreign defendant.  *Lucas*, 936 F.2d 432, 432 (9th Cir. 1991) ("We agree with the district court that the plain language of Rule 4(j) makes the 120–day service provision inapplicable to service in a foreign country, and so hold."); *Rudolph*, 2009 WL 248370, at *3 (denying motion to dismiss brought under Rule 12(b)(5) in part because "Rule 4(m) specifically exempts service on individuals in foreign countries pursuant to Rule 4(f) from the 120–day time limit.").[4]  Accordingly, Illumina's complaint cannot dismissed for ineffective service at this stage of the proceedings, and Illumina must be given a reasonable opportunity to effectuate service on BGI Ltd. in China.

Indeed, Illumina has already taken steps to do so through the time-consuming and cumbersome Hague Convention process.  It should not be forced to engage in this wasteful process, however, when it is plain that BGI Ltd. has notice of Illumina's complaint, does not dispute the Court's personal jurisdiction, has extensive contacts with—and even touts its presence in— this judicial district, and could easily accept service via its counsel or one of the four BGI affiliates that have already been

---

[3] In *Henderson*, the Supreme Court was construing a provision of the Rules, 4(j), that established a 120-day window for service, but otherwise was substantially identical to the current Rule 4(m).

[4] Although the Court in *Rudolph* addressed foreign service of individuals, the exception in Rule 4(m) the court relied upon applies to both individuals and corporations.

properly served. Accordingly, Illumina respectfully requests that the Court put this ancillary procedural issue to rest for good by ordering BGI Ltd., under the authority granted to it by Rule 4f(3), to accept service of the complaint via its counsel or one of its affiliates. Courts in this district routinely use their Rule 4(f)(3) authority to order substituted service of defendants located in China in this manner, regardless of whether Hague Convention service has been attempted. *See, e.g.*, *In re LDK Solar Sec. Litig.*, No. C 07-05182 WHA, 2008 WL 2415186, at *2 (N.D. Cal. June 12, 2008) (granting motion to serve six Chinese individuals and entities through California-based affiliate, and noting that "it is not necessary for plaintiffs to first attempt service through 'internationally agreed means' before turning to 'any other means not prohibited by international agreement'"); *Keck v. Alibaba.com, Inc.*, No. 17-CV-05672-BLF, 2017 WL 10820533, at *2 (N.D. Cal. Dec. 20, 2017) (authorizing service on Chinese companies via electronic messaging service even though Hague Convention service had not been attempted, and stating that "Rule 4(f)(3) allows for an alternate means of service as long as it is directed by a court and not prohibited by international agreement."). In the interests of judicial efficiency, if BGI Ltd. is unwilling to accept service through counsel or an affiliate, the Court should use its Rule 4(f)(3) authority to order that it do so.

## V. ILLUMINA'S DIRECT INFRINGEMENT ALLEGATIONS AGAINST BGI LTD. EASILY SATISFY THE PLAUSIBILITY STANDARD

The factual allegations from the complaint recited above leave no room for doubt—Illumina has more than adequately stated a claim for direct infringement by BGI Ltd., under multiple different theories of liability. For example, Illumina has alleged that BGI Ltd. "used at least the MGISEQ-2000 and BGISEQ-500 in its San Jose, California facility"—a factual allegation that, in view of Illumina's other allegations explaining how use of those systems infringes the asserted patents, establishes an act of direct infringement. Dkt. No. 1 ¶¶ 49, 120. Similarly, Illumina alleges that BGI Ltd., as well as the other defendants, has "used the MGISEQ and BGISEQ sequencers in the United States" and continues to "use the MGISEQ and BGISEQ products and related reagents in the United States whenever they install these types of sequencers at a United States facility." *Id.* ¶¶ 38, 42. These specific factual allegations of infringing acts are alone sufficient to defeat BGI Ltd.'s 12(b)(6) motion. *See* 35 U.S.C. 271(a) ("[W]hoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent

therefor, infringes the patent."). BGI Ltd.'s contention that "Illumina has not alleged that BGI Genomics performs each of the claimed method steps in the United States" (Dkt. No. 27 at 10) is simply untrue.

Illumina's complaint also states a claim for BGI Ltd.'s direct infringement under a different, alternate theory—that BGI Ltd. is liable as an infringer because it directs and controls the acts of other affiliated entities in the BGI Group. Under controlling authority, "an entity [is] responsible for others' performance of method steps in two sets of circumstances: (1) where that entity directs or controls others' performance, and (2) where the actors form a joint enterprise." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015). Here, Illumina has alleged facts that plausibly establish BGI Ltd.'s direction and control.

Indeed, Illumina has expressly alleged that BGI Ltd. "manages the infringing activity in California by **controlling the Defendant**." Dkt. No. 1 ¶ 20); *see also id.* ¶¶ 10 (BGI Ltd. "directs, funds, and manages the infringing activity set forth in the Complaint."). Similarly, Illumina has alleged that BGI Ltd. 'is responsible for the use of MGISEQ and BGISEQ products in the United States" and that "those for whom it is responsible have used at least the MGISEQ-2000 and BGISEQ-500 in its San Jose, California facility." *Id.* ¶ 49. Illumina has supported these allegations with facts showing that, for example, BGI Ltd. touts the California facilities as its own, speaks on behalf of the entire BGI group through its executives, and enters into contracts on behalf of the BGI group. *Id.* ¶¶ 20-21. Plainly, Illumina has plausibly pled that BGI Ltd. directs and controls the infringing acts in the United States of other members of the BGI Group. This independent source of direct infringement liability provides yet another reason to deny BGI Ltd.'s 12(b)(6) motion.

## VI. CONCLUSION

For all the foregoing reasons, BGI Ltd.'s motion to dismiss should be denied.

| | | |
|---|---|---|
| 1 | Date:  August 12, 2019 | */s/ Edward R. Reines* |
| 2 | | Edward R. Reines (No. 135960) |
| | | DEREK C. WALTER (Bar No. 246322) |
| 3 | | WEIL, GOTSHAL & MANGES LLP |
| | | 201 Redwood Shores Parkway |
| 4 | | Redwood Shores, CA 94065 |
| | | Tel: (650) 802-3000 |
| 5 | | Fax: (650) 802-3100 |
| | | edward.reines@weil.com |
| 6 | | derek.walter@weil.com |
| 7 | | |
| | | Attorneys for Plaintiff |
| 8 | | ILLUMINA, INC. and ILLUMINA CAMBRIDGE LTD. |