EDWARD R. REINES (Bar No. 135690)
edward.reines@weil.com
DEREK C. WALTER (Bar No. 246322)
derek.walter@weil.com
CHRISTOPHER S. LAVIN (Bar No. 301702)
christopher.lavin@weil.com
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA  94065
Telephone:  (650) 802-3000
Facsimile:  (650) 802-3100

STEPHEN BOSCO (*pro hac vice*)
stephen.bosco@weil.com
WEIL, GOTSHAL & MANGES LLP
2001 M Street
Washington, DC  20036
Telephone:  (202) 682-7000
Facsimile:   (202) 857-0940

Attorneys for Plaintiffs/
       Counterclaim-Defendants,
ILLUMINA, INC. AND
ILLUMINA CAMBRIDGE LTD.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| ILLUMINA, INC. and<br>ILLUMINA CAMBRIDGE LTD.,<br><br>        Plaintiffs,<br><br>    v.<br><br>BGI GENOMICS CO., LTD.,<br>BGI AMERICAS CORP.,<br>MGI TECH CO., LTD.,<br>MGI AMERICAS, INC., and<br>COMPLETE GENOMICS INC.,<br><br>        Defendants.<br><hr>COMPLETE GENOMICS INC.,<br><br>        Counterclaim-Plaintiff,<br><br>    v.<br><br>ILLUMINA, INC. and<br>ILLUMINA CAMBRIDGE LTD.<br><br>        Counterclaim-Defendants. | Case No. 3:19-cv-03770-WHO<br><br>**PLAINTIFFS ILLUMINA, INC. AND ILLUMINA CAMBRIDGE LTD.'S MOTION TO STRIKE AND DISMISS DEFENDANTS' BGI AMERICAS CORP., MGI TECH CO., LTD., MGI AMERICAS, INC., AND COMPLETE GENOMICS INC.'S AFFIRMATIVE DEFENSES AND COUNTERCLAIMS**<br><br>Date: December 11, 2019<br>Time: 2:00 p.m.<br>Courtroom: 2, 17th Floor<br><br>Hon. William H. Orrick |

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................. 1

II.   LEGAL STANDARDS ........................................................................................ 4

    A.    Legal Standard For Motion To Strike Under Rule 12(f) ............................ 4

    B.    Legal Standard For Motion To Dismiss Under Rule 12(b)(6).................... 4

    C.    The Legal Standards For Pleading Inequitable Conduct Are Exacting ...................... 5

    D.    Request For Judicial Notice; Rule of Completeness..................................... 6

III.  DEFENDANTS' INEQUITABLE CONDUCT ARGUMENTS ARE IMPLAUSIBLE AND SHOULD BE STRICKEN AND DISMISSED ............................... 6

    A.    Pleading Inequitable Conduct Based On Arguments About Prior Art Before The PTAB And Federal Circuit, As Attempted Here, Is Implausible ........................ 6

    B.    Defendants' "Yield" Argument Based On *Loubinoux* Is Implausible........................ 8

    C.    Defendants' "Rigidity" Argument Is Implausible ...................................... 13

    D.    Defendants' "*Boyer*" Argument Is Implausible........................................... 15

    E.    Defendants' "*Stanton*" Argument Is Implausible ...................................... 17

IV.   DEFENDANTS' AFFIRMATIVE DEFENSES WITHOUT ANY FACTUAL SUPPORT SHOULD BE STRICKEN TOO ....................................................... 19

V.    DEFENDANTS' INDUCED INFRINGEMENT COUNTERCLAIM AND WILLFULNESS ALLEGATIONS SHOULD BE DISMISSED ......................................... 20

    A.    Defendants' Inducement Patent Infringement Claim Should Be Dismissed ............. 20

    B.    Defendants' Willfulness Allegations Should Be Dismissed..................................... 21

VI.   CONCLUSION.................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Accordant Energy, LLC v. Vexor Tech., Inc.*,
   No. 17-cv-411, 2017 WL 4169635 (N.D. Ohio Sept. 19, 2017)........................................ 8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................................ 4

*Atlas IP LLC v. Pac. Gas & Elec. Co.*,
   No. 15-cv-05469, 2016 WL 1719545 (N.D. Cal. Mar. 9, 2016)...................................... 5

*Barcamerica Int'l v. Tyfield Importers, Inc.*,
   289 F.3d 589 (9th Cir. 2002)........................................................................................... 6

*Bascom Research LLC v. Facebook, Inc.*,
   No. 12-cv-6293, 2013 WL 968210 (N.D. Cal. Mar. 12, 2013)........................................ 5

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................................ 4

*BlackBerry Ltd. v. Typo Prods. LLC*,
   No. 14-cv-00023-WHO, 2014 WL 1867009 (N.D. Cal. May 8, 2014) ..................... 4, 5

*Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.*,
   117 F.3d 655 (2d Cir. 1997)............................................................................................ 7

*CAP Co., Ltd. v. McAfee, Inc.*,
   No. 14-cv-05068-JD, 2015 WL 3945875 (N.D. Cal. June 26, 2015) ........................... 21

*Definitive Holdings, LLC. v. Powerteq LLC*,
   No. 18-cv-844 TS, 2019 WL 24909574 (D. Utah June 7, 2019) .................................... 5

*Elec. Scripting Prods., Inc. v. HTC Am. Inc.*,
   No. 17-cv-05806-RS, 2018 WL 1367324 (N.D. Cal. Mar. 16, 2018).......................... 22

*Exergen Corp. v. Brooklands Inc.*,
   290 F. Supp.3d 113 (D. Mass. 2018).............................................................................. 7

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
   575 F.3d 1312 (Fed. Cir. 2009) ...................................................................................... 5

*Finjan, Inc. v. Check Point Software Techs., Inc.*,
   No. 18-cv-02621-WHO, 2019 WL 330912n.1 & 2 (N.D. Cal. Jan. 25, 2019) .......... 2, 6

*Frenzel v. Aliphcom*,
   76 F. Supp.3d 999 (N.D. Cal. 2014)............................................................................... 4

*Genter v. Allstate Prop. & Casualty Ins. Co.*,
No. 11-cv-0709, 2011 WL 2533075 (W.D. Pa. June 24, 2011)......................................4

*Illumina, Inc. v. Qiagen, N.V.*,
207 F. Supp.3d 1081 (N.D. Cal. 2016)......................................................................2

*In re Gilead Scis. Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008)................................................................................5

*In re Magnum Oil Tools Intern'l, Ltd.*,
829 F.3d 1364 (Fed. Cir. 2016)............................................................................12

*Intelligent Bio-Systems, Inc. v. Illumina Cambridge Ltd.*,
821 F.3d 1359 (Fed. Cir. 2016)..............................................................................2

*Jenkins v. LogicMark, LLC*,
No. 3:16-cv-751-HEH, 2017 WL 376154 (E.D. Va. Jan. 25, 2017)..............................23

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*,
869 F.3d 1372 (Fed. Cir. 2017)............................................................................20

*Lippert Components Mfg., Inc. v. MOR/ryde, Inc.*,
No. 3:16-cv-263 RLM-MGG, 2018 WL 345767 (N.D. Ind. Jan. 10, 2018)....................21

*Magellan Int'l Corp. v. Salzgitter Handel GmbH*,
76 F.Supp.2d 919 (N.D. Ill. 1999)..........................................................................6

*Miller v. Ghiradelli Chocolate Co.*,
No. 12-cv-04936 LB, 2013 WL 3153388 (N.D. Cal. June 19, 2013)..............................4

*Scripps Research Inst. v. Illumina, Inc.*,
No. 16-cv-661 JLS (BGS), 2016 WL 6834024 (S.D. Cal. Nov. 21, 2016)......................22

*Sidney-Vinstein v. A.H. Robins Co.*,
697 F.2d 880 (9th Cir. 1983)..................................................................................4

*Sinesterra v. Roy*,
347 Fed. Appx. 9 (5th Cir. 2009)..............................................................................7

*Software Res., Inc. v. Dynatrace LLC*,
316 F. Supp.3d 1112 (N.D. Cal. 2018)....................................................................22

*State Indus., Inc. v. Mor-Flo Indus., Inc.*,
948 F.2d 1573 (Fed. Cir. 1991)..............................................................................6

*Therasense, Inc. v. Becton, Dickinson and Co.*
649 F.3d 1276 (Fed. Cir. 2011) (*en banc*)..........................................................5, 6

*Zond, LLC v. Renesas Elecs. Corp.*,
No. 13-cv-11625-NMG, 2014 WL 4161348 (D. Mass. Aug. 15, 2014)........................22

**Statutes**

35 U.S.C. § 271(b) ............................................................................................................ 20

35 U.S.C. § 287 ........................................................................................................... 1, 19

35 U.S.C. § 325(d) ............................................................................................................ 11

37 C.F.R. § 42.11(a) ............................................................................................................ 7

37 C.F.R. § 42.11(d)(1) ........................................................................................................ 7

37 C.F.R. § 42.12(a) ............................................................................................................ 7

Fed. R. Civ. P. 12(b)(3) ........................................................................................................ 1

Fed. R. Civ. P. 12(f) ....................................................................................................... 1, 4

Fed. R. Civ. P. 9(b) .............................................................................................................. 5

Fed. R. Evid. 106 ................................................................................................................. 6

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on Wednesday, December 11, 2019, at 2:00 p.m., in Courtroom 2, 17th Floor, United States District Court for the Northern District of California before the Honorable William H. Orrick, Illumina, Inc. and Illumina Cambridge Ltd., (collectively, "Illumina") shall and hereby do move the Court pursuant to Federal Rule of Civil Procedure 12(f) and 12(b)(3) to strike and for judgment against BGI Genomics Co., Ltd., BGI Americas Corp., MGI Tech Co., Ltd., MGI Americas, Inc., and Complete Genomics Inc.'s (collectively, "Defendants") Third (Prosecution Laches), Fourth (Prosecution History Estoppel), Sixth (Statute of Limitations), Seventh (35 U.S.C. § 287), Ninth (No Enhanced Damages), Tenth (No Exceptional Case), Eleventh (Inequitable Conduct) and Twelfth (Unclean Hands) Affirmative Defenses as set forth in Defendants' Answer to Illumina's First Amended Complaint For Patent Infringement And Counterclaim For Patent Infringement (Dkt. No. 54). Further, Illumina shall and hereby does move the Court pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Defendants' inducement patent infringement claim and their willful infringement allegations and accompanying request for enhanced damages.

This motion is based on the following Memorandum of Points and Authorities and such other and further documentary and oral evidence and argument as the Court may permit before ruling on this motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Defendants' inequitable conduct allegations are implausible, futile and ring hollow. If tolerated, they would expand this case dramatically toward the protected realm of attorney-client privilege and implicate invasive discovery from ten attorneys accused of fraud and deception. This would smear the reputations of upstanding professionals needlessly.

This is not your typical inequitable conduct defense that alleges the withholding of prior art or submission of false declarations to an overworked examiner during *ex parte* prosecution of a patent. Defendants' fringe theory is implausible for so many reasons. Defendants allege that ten attorneys, including a member of Illumina's trial team, were in cahoots to commit systemic fraud on the courts. These attorneys supposedly defrauded six sophisticated and technically-savvy Patent Trial and Appeal

Board ("PTAB") judges and a three-member Federal Circuit panel about the interpretation of the prior art that was before them. This implausible scheme was supposedly committed even though motivated and well-financed infringers, including Defendants, were parties to these proceedings and would have had the full opportunity to expose any fraudulent statements that these ten attorneys allegedly made. Of course, because there were no untruths, there is no substance to Defendants' allegations.

U.S. Patent No. 7,566,537 (the "'537 Patent") is a strong and incredibly battle-hardened patent. A prior infringer, multi-national conglomerate Qiagen, N.V. and its various subsidiaries, including Intelligent Bio-Systems, Inc. (collectively, "Qiagen"), challenged this patent at *inter partes* review ("IPR") before the PTAB, which instituted the proceeding and held a validity trial. *Intelligent Bio-Systems, Inc. v. Illumina Cambridge Ltd.*, IPR2013-00517, Paper 16 (PTAB Feb. 13, 2014) (Appx0117-133).[1, 2] In a thorough decision, the PTAB considered both sides' arguments regarding interpretation of the prior art, and resolutely upheld the validity of the '537 Patent. *Intelligent Bio-Systems, Inc. v. Illumina Cambridge Ltd.*, IPR2013-00517, Paper 87 (PTAB Feb. 11, 2015) (Appx0193-217). Qiagen appealed to the Federal Circuit, which also upheld the validity of the '537 Patent in a precedential decision on the technical specifics. *Intelligent Bio-Systems, Inc. v. Illumina Cambridge Ltd.,* 821 F.3d 1359 (Fed. Cir. 2016). Judge Alsup then granted a preliminary injunction against Qiagen based on the '537 Patent, finding that there was no substantial question regarding the validity of the '537 Patent. *Illumina, Inc. v. Qiagen, N.V.*, 207 F. Supp.3d 1081 (N.D. Cal. 2016).

Defendants then brought two more IPRs challenging the validity of the '537 Patent. *Complete Genomics, Inc. v. Illumina Cambridge Ltd.*, IPR2017-02172, Paper 1 (PTAB Oct. 5, 2017) (Appx0218-296). *Complete Genomics, Inc. v. Illumina Cambridge Ltd.* IPR2017-02174, Paper 1 (PTAB Oct. 5, 2017) (Appx0362-441). The PTAB rejected Defendants' invalidity arguments and refused to institute further proceedings because Defendants failed even to establish a *prima facie* invalidity case. *Complete*

---

[1] Although Intelligent Bio-Systems, Inc. ("IBS") is the named petitioner for this IPR, Qiagen is the parent company to IBS and was the real party-in-interest in the proceeding, and therefore this IPR is referred to as the "Qiagen IPR."

[2] Pursuant to Federal Rule of Evidence 201, Illumina requests the Court take notice of all cited IPR, Federal Circuit, and prosecution history materials as matters of public record. *See Finjan, Inc. v. Check Point Software Techs., Inc.*, No. 18-cv-02621-WHO, 2019 WL 330912, at *7 n.1 & 2 (N.D. Cal. Jan. 25, 2019) (slip. op.).

*Genomics, Inc. v. Illumina Cambridge Ltd.*, IPR2017-02172, Paper 20 (PTAB Apr. 20, 2018) (Appx0313-333); *Complete Genomics, Inc. v. Illumina Cambridge Ltd.* IPR2017-02174, Paper 20 (PTAB Apr. 20, 2018) (Appx0362-441). Further, Defendants sought reconsideration of the PTAB's denial of institutions, which were also rejected. *Complete Genomics, Inc. v. Illumina Cambridge Ltd.*, IPR2017-02172, Paper 22 (PTAB Aug. 2, 2018) (Appx0351-361); *Complete Genomics, Inc. v. Illumina Cambridge Ltd.* IPR2017-02174, Paper 22 (PTAB Aug. 2, 2018) (Appx0588-601).

Defendants' allegations are implausible for many reasons as set forth below. Defendants level multiple accusations of fraud against Illumina attorneys. In each case, the alleged scheme is implausible because Defendants allege that Illumina's attorneys intentionally presented technologically false arguments to sophisticated panels of judges *and* that the truth is unmistakable from the documents that Illumina's attorneys either provided to the judges or knew that the judges possessed. And, in each proceeding, Illumina's attorneys were facing a team of scientifically-credentialed attorneys representing their adversaries that would be highly motivated to call out any significant weakness in Illumina's arguments and with ample opportunity to do so.

As it turns out, the judges frequently rejected the arguments Defendants now make and upheld Illumina's arguments. They also found that the arguments Defendants make now were beside the point because the invalidity attacks failed on other grounds. Never did any of the nine judges involved find that Illumina misled them at all. During the IPRs, Defendants sought, and received, the right to file a reply to Illumina's patent owner preliminary response that supposedly contained the fraudulent statements, but addressed other issues and not any of the alleged falsehoods. Nor did Defendants attempt to move for sanctions before the judges that were supposedly misled—even though Defendants insist that the misrepresentations are patently false and obvious on their face. It is implausible that Defendants' legal team would not respond to alleged misrepresentations of fact or seek to file sanctions motions, if the alleged misrepresentations were truly material. On these bases, these allegations are implausible.

In addition, Defendants include a series of affirmative defenses without any factual support. Because these defenses do not meet the *Twombly/Iqbal* pleading standard, these defenses should be stricken too. Defendants' inducement infringement claims and their willlful infringement allegations

and accompanying request for enhanced damages are similarly without sufficient factual support and thus Illumina moves to dismiss these claims.

## II. LEGAL STANDARDS

### A. Legal Standard For Motion To Strike Under Rule 12(f)

"Federal Rule of Civil Procedure 12(f) authorizes a court to 'strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.'" *Frenzel v. Aliphcom*, 76 F. Supp.3d 999, 1006 (N.D. Cal. 2014) (citing Fed. R. Civ. P. 12(f)). "The function of a motion to strike 'is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial.'" *Id.* (quoting *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983)). "The court has discretion to grant a motion to strike 'for the purpose of streamlining the ultimate resolution of the action and focusing the jury's attention on the real issues in the case.'" *Miller v. Ghiradelli Chocolate Co.*, No. 12-cv-04936 LB, 2013 WL 3153388, at *2 (N.D. Cal. June 19, 2013)*; see also Genter v. Allstate Prop. & Casualty Ins. Co.*, No. 11-cv-0709, 2011 WL 2533075, at *2 (W.D. Pa. June 24, 2011) ("Rule 12(f) allows the Court to 'clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters that will not have any possible bearing on the outcome of the litigation.'"). Further, a court may grant a motion to strike an affirmative defense that does not meet the *Twombly/Iqbal* pleading standard. *See BlackBerry Ltd. v. Typo Prods. LLC*, No. 14-cv-00023-WHO, 2014 WL 1867009, at *5 (N.D. Cal. May 8, 2014) (granting plaintiff's motion to strike defendant's affirmative defenses that did not plead any facts and therefore finding them insufficiently pleaded).

### B. Legal Standard For Motion To Dismiss Under Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "sufficient factual matter…to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In assessing whether the factual support proffered by Defendants' answers and counterclaims arise to the level of plausibility, the Court should not "accept allegations that are merely conclusory, unwarranted deductions of fact, or

unreasonable inferences." *Bascom Research LLC v. Facebook, Inc.*, No. 12-cv-6293, 2013 WL 968210, at *3 (N.D. Cal. Mar. 12, 2013) (citing *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)). "Thus, a reviewing court may begin 'by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Atlas IP LLC v. Pac. Gas & Elec. Co.*, No. 15-cv-05469, 2016 WL 1719545, at *2 (N.D. Cal. Mar. 9, 2016) (quoting *Iqbal*, 556 U.S. at 679).

## C. The Legal Standards For Pleading Inequitable Conduct Are Exacting

"Inequitable conduct must be pleaded with particularity under Federal Rule of Civil Procedure 9(b)." *BlackBerry*, 2014 WL 1867009, at *1 (*citing Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1318 (Fed. Cir. 2009)). "To meet the intent prong, the pleading 'must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO.'" *Id.*

Because inequitable conduct has been pled so excessively, and such allegations are so costly to the system, the Federal Circuit *en banc* tightened the standard for intent and materiality in *Therasense, Inc. v. Becton, Dickinson and Co.* 649 F.3d 1276, 1290 (Fed. Cir. 2011) (*en banc*) ("This court now tightens the standards for finding both intent and materiality in order to redirect a doctrine that has been overused to the detriment of the public."); *id.* at 1294 ("[C]ourts, and the public at large have an interest in reining in inequitable conduct."). "The standards for adequately pleading inequitable conduct are accordingly exacting." *Definitive Holdings, LLC. v. Powerteq LLC*, No. 18-cv-844 TS, 2019 WL 2409574, at *2 (D. Utah June 7, 2019).

The specific intent to deceive must be "the single most reasonable inference able to be drawn from the evidence." *Therasense*, 649 F.3d at 1297. "[W]hen there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found." *Id.* at 1290-91. For materiality, absent egregious misconduct, the doctrine "should only be applied in instances where the patentee's misconduct resulted in the unfair benefit of receiving an unwarranted claim." *Id.* at 1292.

In *BlackBerry*, this Court previously granted a motion to dismiss an inequitable conduct affirmative defense. *See Blackberry*, 2014 WL 1867009, at *5.

### D. Request For Judicial Notice; Rule of Completeness

Pursuant to Federal Rule of Evidence 201, the Court may take judicial notice of prosecution history materials and pleadings in a different proceeding as matters of "public record" on a motion to strike and dismiss. *See Finjan,* 2019 WL 330912, at *7 n.1 & 2. Further, pursuant to Federal Rule of Evidence 106, if a party introduces all or part of a writing, an adverse party may require the introduction of any other part—or any other writing—that in fairness ought to be considered at the same time. *See* Fed. R. Evid. 106; *see also Barcamerica Int'l v. Tyfield Importers, Inc.*, 289 F.3d 589, 594 (9th Cir. 2002) (finding under Rule 106 the appellant could have required the introduction of other parts of statements or writings at the time appellee introduced parts of the statements or writings before the district court on a motion for summary judgment); *Magellan Int'l Corp. v. Salzgitter Handel GmbH*, 76 F.Supp.2d 919, 923 (N.D. Ill. 1999) (invoking Rule 106 on a motion to dismiss finding when "one party detaches and presents only certain links of the chain in its effort to state a claim for relief, the party against whom such an incomplete picture is painted is entitled to fill in the skeletal outline thus presented by the complaining party by adding the missing links.").

## III. DEFENDANTS' INEQUITABLE CONDUCT ARGUMENTS ARE IMPLAUSIBLE AND SHOULD BE STRICKEN AND DISMISSED

### A. Pleading Inequitable Conduct Based On Arguments About Prior Art Before The PTAB And Federal Circuit, As Attempted Here, Is Implausible

The Federal Circuit has never held that the doctrine of inequitable conduct applies to IPR or Federal Circuit appeals. There are many reasons why such a far-flung expansion of the doctrine would be troubling. Arguments about patent validity are daily before the PTAB and in the courts. Suffice to say, if every successful argument about the prior art could be re-characterized in a pleading as a material misstatement, inequitable conduct arguments would proliferate like the plague they historically have been. *Therasense*, 649 F.3d at 1289 (The "habit of charging inequitable conduct in almost every major patent case has become an absolute plague. Reputable lawyers seem to feel compelled to make the charge against other reputable lawyers on the slenderest grounds[.]").

The PTAB and the Federal Circuit have their own processes for addressing allegations that attorneys have misled them. The Federal Circuit has discretion to sanction misconduct such as fraud on the Court. *See State Indus., Inc. v. Mor-Flo Indus., Inc.*, 948 F.2d 1573, 1578-79 (Fed. Cir. 1991).

The PATB has its own Duty of Candor and a rule authorizing sanctions motions for the violation of that or other duties. *See* 37 C.F.R. § 42.11(a) ("Parties and individuals involved in the proceeding have a duty of candor and good faith to the Office during the course of a proceeding."), 37 C.F.R. § 42.11(d)(1) ("[T]he Board may impose an appropriate sanction on any attorney, registered practitioner, or party that violated the [Duty of Candor] or is responsible for the violation."), and 37 C.F.R. § 42.12(a)(2) ("The Board may impose a sanction against a party for misconduct, including: … Advancing a misleading or frivolous argument or request for relief; [or] Misrepresentation of a fact"). If a litigant believes that misrepresentations are being made to a tribunal, it should not be permitted to fail to present them to the allegedly deceived judges and then to raise allegations of fraud regarding them in a collateral action. Principles of comity, judicial economy, and common sense support this conclusion. *See Sinesterra v. Roy*, 347 Fed. Appx. 9, 10 (5th Cir. 2009) ("A party cannot relitigate in an independent action issues that were open to litigation in the former action where he had a fair opportunity to make his claim or defense in that action.") (internal citation and quotations omitted); *Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655, 662 (2d Cir. 1997) ("[I]t is fundamental that equity will not grant relief if the complaining party has, or by exercising proper diligence would have had, an adequate remedy at law, or by proceedings in the original action ... to open, vacate, modify, or otherwise obtain relief against, the judgment.") (internal citation and quotations omitted). Defendants should have raised their inequitable conduct allegations contemporaneously and not now in a collateral proceeding.

At most, Defendants' inequitable conduct allegation should be evaluated skeptically and with a recognition that—if viable at all—it is much harder to plausibly allege an intent to deceive and materiality when the proceeding includes a motivated adversary and the arguments are being assessed by sophisticated and technically educated panels of judges with access to technical advisors and clerks. This is even more so when the actual references that form the basis for the inequitable conduct allegations are before the sophisticated and technically educated factfinder whom is free to come to her/his own conclusions regarding their import. *See Exergen Corp. v. Brooklands Inc.*, 290 F. Supp.3d 113, 124 (D. Mass. 2018) ("In the '938 patent prosecution, the '813, '238, and '435 patents were before the examiner, as were litigation documents...thus, prior art and material information arising from prior related litigation was disclosed to the examiner. The dispute here is over attorney argument, which

lacks materiality in this setting because the examiner was free to come to an independent conclusion with respect to the '938 patent with all of the disclosed information to inform the examiner's decision."); *Accordant Energy, LLC v. Vexor Tech., Inc.*, No. 17-cv-411, 2017 WL 4169635, at \*5 (N.D. Ohio Sept. 19, 2017) ("Here, because [Plaintiff] disclosed [the prior art], the examiner is presumed to have the inherent teachings contained therein and, as such, there is no 'omission' on which to base an equitable conduct claim.").

### B. Defendants' "Yield" Argument Based On *Loubinoux*[3] Is Implausible

Defendants allege that Illumina's attorneys intentionally misrepresented *Loubinoux* and other prior art by confusing the related concepts of "yield" and "efficiency" such that they misled nine different judges on the same point. Dkt. No. 54 at 37-46 (¶¶ 221-37). Specifically, Defendants allege that Illumina argued that *Loubinoux* disclosed "efficiency" when it actually disclosed "yield." *Id.* at 39-43 (¶¶ 225-30). As established below, this inequitable conduct allegation is implausible.

First, the putative scheme would have the Illumina attorneys trying to mislead sophisticated judges about the difference between the "yield" and "efficiency" of a chemical reaction. The judges had *Loubinoux* before them and were free to independently evaluate it—and did—and found Illumina's arguments to be more credible. The three-judge panel on the Qiagen IPR included Judge Green, who has a Doctorate in Chemistry from Johns Hopkins University.[4] The Federal Circuit (which includes at least one chemist/judge) routinely handles complex technologies in this area and is well known to hire technically educated clerks and has an office of technical advisor. In addition, Qiagen's opposing counsel included four Ballard Spahr technology attorneys, including one with a Doctorate in Biochemistry and Molecular Biology.[5] Qiagen itself employs numerous chemists specializing in sequencing. It is implausible that Illumina's attorneys would believe they could defraud this sophisticated set of judges about the issue of "yield" versus "efficiency," especially in the face of a

---

[3] Bernard Loubinoux et al., *Protection of Phenols by the Azidomethylene Group Application to the Synthesis of Unstable Phenols*, 44 TETRAHEDRON 6055-64 (1988) (Dkt. No. 54-9).

[4] *See* https://www.wsgr.com/WSGR/DBIndex.aspx?SectionName=attorneys/BIOS/16523.htm (last accessed: Oct. 31, 2019).

[5] *See* https://www.ballardspahr.com/people/attorneys/marty_scott (last accessed: Oct. 31, 2019).

highly motivated adversary that is credentialed in the science.

Second, Defendants acknowledge that Illumina submitted an expert declaration to support its allegedly deceptive argument that expressly stated that *Loubinoux* taught a 60-80% **yield,** which is what the Illumina attorneys were supposedly concealing.  *Id.* at 39 (¶ 225).   As Defendants themselves point out, the Illumina attorneys actually directed the PTAB panel to its expert stating that *Loubinoux* taught "a 60-80% yield."  *Id.*  This is flatly inconsistent with an intent to deceive and makes other statements immaterial.

Third, Defendants acknowledge that Illumina's expert freely testified at deposition that *Loubinoux* taught a 60-80% **yield,** which again is what the Illumina attorneys were supposedly concealing.   Dkt. No. 54 at 39 (¶ 225).  This shows that the Qiagen attorneys covered the "yield" versus "efficiency" issue and had this testimony to enter into the record to the extent that it was relevant.  This is inconsistent with an intent to deceive and this testimony renders other statements immaterial.

Fourth, Defendants allege that the Illumina attorneys intentionally mischaracterized a series of other references stating they disclosed "efficiency" rather than "yield."  *Id.* at 40-42 (¶ 226).   But Defendants themselves acknowledge that the supporting expert declaration "clearly states that the references were reporting *yield*."[6]  *Id.* (emphasis in original).   And Defendants include the Illumina chart specifying that the references disclose "yield" in their allegations.  *Id.*  Defendants allege that the Illumina attorneys wrote this declaration clearly stating that the references disclosed "yield."  *Id.* at 43-44 (¶ 230).   During deposition, Illumina's expert freely testified that the references disclosed "yield" and explained the difference between "yield" and "efficiency."  *Id.* at 40-42 (¶ 226).  The presence of this testimony in the record renders Defendants' intent to deceive and materiality allegations implausible.   There would be no reason to disclose that the references addressed "yield" so conspicuously and direct the judges to those disclosures, if one was executing the alleged scheme to hide that information.  In addition, the alleged arguments of counsel are not material because the judges were directed to the "yield" disclosures and had the full reference before them to independently evaluate.

---

[6] Emphasis supplied unless otherwise noted.

1    Fifth, given Illumina's clarity, the PTAB understood that *Loubinoux* taught "yield" because they

2    said so in their decision upholding the '537 Patent. *See Intelligent Bio-Systems, Inc. v. Illumina*

3    *Cambridge Ltd.*, IPR2013-00517, Paper 87 at 13 (PTAB Feb. 11, 2015) (Appx0193-217 at Appx0205)

4    ("*Loubinoux* discloses that removal of an azidomethyl protecting group from a phenolic hydroxyl using

5    triphenylphosphine, followed by water in tetrahydrofuran at 25 °C, resulted in deprotected phenols 'as

6    pure products at a **yield** between 60 and 80%.'"). The lack of deception and materiality is further

7    demonstrated by the Federal Circuit's recognition that *Loubinoux* teaches a "modest efficiency (60-80%

8    **yield**)." *Intelligent Bio-Systems*, 821 F.3d at 1368. This shows both that the Federal Circuit judges

9    understood that *Loubinoux* teaches a "60-80% yield" and that this yield leads to "modest efficiency."

10   Dkt. No. 54 at 45 (¶ 233).

11   Sixth, Qiagen fully vetted the difference between "yield" and "efficiency" before the PTAB and

12   Federal Circuit judges. *See Intelligent Bio-Systems, Inc. v. Illumina Cambridge Ltd.*, IPR2013-00517,

13   Paper 54 at 7 (PTAB July 28, 2014) (Appx0134-154 at Appx0143) ("Illumina relies on organic

14   synthesis references that report isolated pure product yields to support its arguments concerning

15   'removal' or 'conversion' efficiency. However, as a POSITA would understand, isolated pure product

16   yields are a poor proxy for actual reaction efficiency.") (internal citations omitted); *Intelligent Bio-*

17   *Systems, Inc. v. Illumina Cambridge Ltd.*, IPR2013-00517, Paper 67 at 5 (PTAB Sept. 15, 2014)

18   (Appx0174-192 at Appx0180) ("Illumina's reliance on Loubinoux is misplaced as Illumina improperly

19   equates reaction efficiency with pure product yields."); *Intelligent Bio-Systems, Inc. v. Illumina*

20   *Cambridge Ltd.,* No. 2015-1693, Appellant's Br. at 50-52 (Fed. Cir. Aug. 28, 2015) (Appx0001-116 at

21   Appx0059-61) ("[T]he Board made the critical mistake of equating isolated pure product yields with

22   the intrinsic efficiency of the reactions."). And the judges rejected the position that Defendants now

23   propose.

24   Seventh, Defendants filed their own IPRs after the Federal Circuit decision upholding the

25   validity of the '537 Patent. If they believed that Illumina's attorneys had intentionally deceived the

26   PTAB and Federal Circuit judges, they could have argued that in their IPR filing. They did not do so.

27   They did attempt to reargue their contention that *Loubinoux* supposedly only addresses "yield," not

28   "efficiency." *Complete Genomics, Inc. v. Illumina Cambridge Ltd.*, IPR2017-02172, Paper 1 at 50

(PTAB Oct. 5, 2017) (Appx0218-296 at Appx0282) ("Loubinoux actually reports pure product *yields* of an unstable phenol product as between 60 and 80% after purification, *not* only the "efficiency" of the removal.") (emphasis in original); *Complete Genomics, Inc. v. Illumina Cambridge Ltd.*, IPR2017-02174, Paper 1 at 51 (PTAB Oct. 5, 2017) (Appx0362-441 at Appx0427) (same). Three different PTAB judges, including Judge Yang, who has a Doctorate in Molecular, Cellular, and Developmental Biology,[7] rejected Defendants' argument regarding the distinction between "yield" and "efficiency" that is at the heart of their inequitable conduct allegation. *Complete Genomics, Inc. v. Illumina Cambridge Ltd.*, IPR2017-02172, Paper 20 at 20 (PTAB Apr. 20, 2018) (Appx0313-333 at Appx0332) ("[W]e are not persuaded the reasons advanced by Petitioner justify avoidance of § 325(d) when the Board and the Federal Circuit have already considered the relied upon prior art."); *Complete Genomics, Inc. v. Illumina Cambridge Ltd.*, IPR2017-02174, Paper 20 at 32 (PTAB Apr. 20, 2018) (Appx 0529-0567 at Appx0560) ("Loubinoux teaches this method was less effective than the hydrogen treatment, which at best resulted in product yields of 60–80%. We thus agree with Patent Owner, on this record, that 'Loubinoux would have led the ordinary artisan to believe that phosphine-based cleavage was the least desirable of the disclosed cleavage methods,' discouraging the skilled artisan from pursuing it.").

Eighth, Defendants sought and received permission to file a reply brief. *Complete Genomics, Inc. v. Illumina Cambridge Ltd.*, IPR2017-02172, Paper 11 (PTAB Feb. 21, 2018) (Appx0297-300); *Complete Genomics, Inc. v. Illumina Cambridge Ltd.*, IPR2017-02174, Paper 11 (PTAB Feb. 21, 2018) (Appx0513-0516). They did not bother to respond to the allegedly fraudulent "yield"/"efficiency" arguments that Illumina had made. *See Complete Genomics, Inc. v. Illumina Cambridge Ltd.*, IPR2017-02172, Paper 14 (PTAB Feb. 28, 2018) (Appx0301-321). *Complete Genomics, Inc. v. Illumina Cambridge Ltd.*, IPR2017-02174, Paper 14 (PTAB Feb. 28, 2018) (Appx0517-528). Nor did Defendants seek to file a sanctions motion based on what they now allege is fraudulent misconduct. Defendants have no legitimate excuse for failing to pursue these remedies if their allegations in this were plausible.

---

[7]   *See* https://www.linkedin.com/in/zhenyu-yang-38547a63 (last accessed: Oct. 31, 2019); https://www.nationwidechildrens.org/-/media/documents/97840 (same).

Ninth, after the '537 Patent was upheld again, Defendants submitted a reconsideration motion to reargue the "yield" versus "efficiency" issue and the PTAB judges rejected that argument again. *Complete Genomics, Inc. v. Illumina Cambridge Ltd.*, IPR2017-02172, Paper 22 at 9 (PTAB Aug. 2, 2018) (Appx0351-361 at Appx0359) ("To the contrary, Tsien's SBS methods involve long sequences, and Petitioner's argument appears to us as little more than after-the-fact rationalization to circumvent high efficiency, quantitative deblocking — Tsien's ***required*** criteria.") (emphasis in original); *Complete Genomics, Inc. v. Illumina Cambridge Ltd.*, IPR2017-02174, Paper 22 at 12 (PTAB Aug. 2, 2018) (Appx0588-601 at Appx0599) ("On the issue of the low yields reported in the art when azidomethyl protecting groups were used, Petitioner simply failed to present sufficiently persuasive evidence that those low yields would not have been discouraging for use in high yield/efficiency DNA sequencing methods."). Because nine different judges rejected Defendants' position, it is not plausible that the Illumina attorneys made material misrepresentations of fact by disagreeing with Defendants. Nor is it plausible that the Illumina attorneys would believe that they could deceive so many sophisticated judges while giving them the prior art to consider themselves, especially when their opponents in those proceedings would be given multiple subsequent opportunities to explain any supposed deception.

Tenth, Defendants are wrong on the merits because a yield of 60-80% implies an efficiency well below the benchmark quantitative efficiency of greater than 99%. The burden was on Defendants to show that the shortcomings in yield were from something other than inefficiencies in the chemical reaction. *See In re Magnum Oil Tools Intern'l, Ltd.*, 829 F.3d 1364, 1380 (Fed. Cir. 2016) ("It is the petitioner that bears the burden of proof in IPRs[.]"). They failed to do so. Thus, it was reasonable to conclude that a yield of 60-80% a modest efficiency below the 99% benchmark. Illumina's arguments interpreting *Loubinoux* were fair.

Finally, Defendants' complaints are immaterial because they have failed to articulate any reason for why one of ordinary skill in the art would even choose an azidomethyl in the first place. In denying Defendants' motion for reconsideration, the PTAB faulted Defendants for "choosing a protecting group [*i.e.*, azidomethyl] that carried expected inefficiencies (and other problems) and seeking to work around such downsides rather than using protecting groups (e.g., 3'-O-allyl) known to be suitable for DNA labeling and sequencing methods." *Complete Genomics, Inc. v. Illumina Cambridge Ltd.*, IPR2017-

02174, Paper 22 at 12-13 (PTAB Aug. 2, 2018) (Appx0588-601 at Appx0599-600). In light of this consideration, the PTAB concluded that Defendants' selection of azidomethyl was impermissibly motivated by "hindsight." *Id.* Because Defendants had not overcome the initial hurdle of explaining why one would even choose azidomethyl, the alleged misstatements that Defendants complain of are immaterial; the IPRs were decided against Defendants on other grounds.

Defendants' "yield" versus "efficiency" inequitable conduct argument is implausible.

## C. Defendants' "Rigidity" Argument Is Implausible

Defendants allege that Illumina's attorneys intentionally misrepresented the rigidity and bulk of an azidomethyl group in response to Defendants' IPRs. Dkt. No. 54 at 47-53 (¶¶ 238-54). As established below, this inequitable conduct allegation is implausible.

First, Defendants argue that the supposed misrepresentation that the azidomethyl group is "linear and rigid" is "plainly false" and "patently false." *Id.* at 48-49 (¶¶ 242-44). Defendants allege that the falsity of Illumina's argument is obvious from "basic tenants [sic] of organic chemistry that are taught in introductory courses." *Id.* at 50 (¶ 246). Defendants quote an introductory Chemistry textbook to highlight the obviousness of that alleged falsity. *Id.* at 50-51 (¶ 247). Defendants' inference that Illumina's attorneys would make manifestly false arguments to try to defraud a sophisticated set of technically educated judges is dubious. The judges had *Metzker*[8] and the '537 Patent, the relevant evidence, before them and were free to independently evaluate these references—and did—and found Illumina's arguments to be more credible. *See Complete Genomics, Inc. v. Illumina Cambridge Ltd.*, IPR2017-02174, Paper 20 at 35-36 (PTAB Apr. 20, 2018) (Appx0529-567 at Appx0563-564) ("The evidence cited by Petitioner shows, compared to azidomethyl, substantially non-polar blocking moieties with longer and flexible arms designed to keep the bulkier groups away from the catalytic center of the polymerase. We are, thus, not persuaded the structures cited by Petitioner would have been predictive of the behavior of a 3'-azidomethyl substitution at the active site.") (internal citations omitted.). Making false arguments with an IPR adversary that includes Defendants' attorneys in this case makes this theory

---

[8] Michael L., Metzker, et al., *Termination of DNA synthesis by novel 3'-modified deoxyribonucleoside 5'-triphosphates*, NUC. ACIDS RES. 22:4259-67 (1994) (Dkt. No. 54-26).

even more far-fetched. Defendants' counsel Ms. Scott has a degree in Chemical Engineering[9] and Jennifer Sklenar has a degree in Biomedical Engineering.[10] This allegation is implausible.

Second, Defendants sought and received permission to file a reply brief. *Complete Genomics, Inc. v. Illumina Cambridge Ltd.*, IPR2017-02172, Paper 11 (PTAB Feb. 21, 2018) (Appx0297-300). *Complete Genomics, Inc. v. Illumina Cambridge Ltd.*, IPR2017-02174, Paper 11 (PTAB Feb. 21, 2018) (Appx0513-516). They did not bother to respond to the allegedly fraudulent "rigidity" arguments that Illumina had made. *See Complete Genomics, Inc. v. Illumina Cambridge Ltd.*, IPR2017-02172, Paper 14 (PTAB Feb. 28, 2018) (Appx0301-312). *Complete Genomics, Inc. v. Illumina Cambridge Ltd.*, IPR2017-02174, Paper 14 (PTAB Feb. 28, 2018) (Appx0517-528). Nor did Defendants seek to file a sanctions motion based on what they now allege is fraudulent misconduct. Defendants have no legitimate excuse for failing to pursue these remedies if their allegations in this were plausible.

Third, in their IPR, Defendants argued to the PTAB on reconsideration that Illumina's "rigidity" argument was wrong and misleading. *See Complete Genomics, Inc. v. Illumina Cambridge Ltd.*, IPR2017-02174, Paper 21 at 11-13 (PTAB May 21, 2018) (Appx0568-587 at Appx0581-583). Based on its expert and independent review of the record, the three technically educated PTAB judges confirmed that ***Defendants'*** argument was unpersuasive on the rigidity issue:

> Upon considering the evidence of record, which included more than simply conflicting testimonial evidence, we determined that Petitioner had not met its burden on a key issue of "explain[ing] adequately why, at the time of the invention, the *larger* azidomethyl moiety . . . would have been expected to fit within the enzyme active site." Dec. 35. On the record before us, we were unpersuaded that a genuine dispute of material fact on the size, ***rigidity***, and steric bulk of an azidomethyl group arose sufficient to justify institution of trial.

*Complete Genomics, Inc. v. Illumina Cambridge Ltd.*, IPR2017-02174, Paper 22 at 10-11 (PTAB Aug. 2, 2018) (Appx0588-601 at Appx0597-598) (alterations in original) (emphasis added). This PTAB finding coupled with Defendants' allegation that Illumina's alleged "rigidity" misrepresentation was "plain" and "patent" renders this inequitable conduct allegation implausible because if it were so obvious, the technically educated PTAB judges would have agreed with Defendants.

---

[9] *See* https://www.arnoldporter.com/en/people/s/scott-katie-jl (last accessed: Oct. 31, 2019).

[10] *See* https://www.arnoldporter.com/en/people/s/sklenar-jennifer (last accessed: Oct. 31, 2019).

Fourth, the PTAB expressly found that the "rigidity" issue was ***not*** material because there were other independent grounds to reject Defendants' invalidity challenge including that DNA-harmful conditions would have discouraged a person skilled in the art from devising the invention anyway:

> But even if we agreed with Petitioner on this point—and the evidence demonstrated sufficiently for institution purposes that a skilled person would not have seen the rigidity, bulk, etc. of an azidomethyl moiety as a negative relative to its use as a protecting group for DNA sequencing methods—the record reflects several other discouraging factors with the use of an azidomethyl group (e.g., DNA-harmful conditions, low yields).

*Id.* at 11 (Appx0598). Given the immateriality of the rigidity issue, arguments made about that issue cannot be material and the complaint allegations are implausible for this additional reason.

### D. Defendants' "*Boyer*[11]" Argument Is Implausible

Defendants allege that Illumina's attorneys intentionally misrepresented *Boyer* in response to Defendants' IPRs. Dkt. No. 54 at 53-58 (¶¶ 255-71). As established below, this inequitable conduct allegation is implausible.

First, Defendants argue that it is "simpl[e to see] by reading the face of Boyer" that the Illumina attorneys misrepresented *Boyer*'s teachings. *Id.* at 54 (¶ 257). Defendants argue that Illumina's *Boyer* arguments were "plainly false." *Id.* at 55 (¶ 261). Defendants even argue that the supposed falsehoods regarding *Boyer* "can be ascertained by simply reading Boyer." *Id.* at 56-57 (¶ 267). Defendants' inference that Illumina's attorneys would make manifestly false arguments to try to defraud a sophisticated set of judges about *Boyer* is dubious. This is especially true because Illumina's attorneys ***submitted*** *Boyer* to the panel and the panel thus had the reference before it to independently evaluate. The PTAB even specifically referenced *Boyer* in its decision denying institution when it faulted Defendants for "not explain[ing] adequately why, at the time of the invention, the larger azidomethyl moiety . . . would have been expected to fit within the active site" proving that the PTAB did indeed consider *Boyer*. *See Complete Genomics, Inc. v. Illumina Cambridge Ltd.*, IPR2017-02174, Paper 20 at 34-35 (PTAB Apr. 20, 2018) (Appx0529-567 at Appx0562-563). Making intentional misrepresentations to a panel of judges with an IPR adversary that includes Defendants' technology-

---

[11] Paul L. Boyer et al., *Selective Excision of AZTMP by Drug-Resistant Human Immunodeficiency Virus Reserve Transcriptase*, 75 J OF VIROLOGY 10:4832-4842 (2001) (Dkt. No. 54-19).

credentialed attorneys renders this theory even more far-fetched.  Defendants' allegation is implausible.

Second, Defendants sought and received permission to file a reply brief.  *Complete Genomics, Inc. v. Illumina Cambridge Ltd.*, IPR2017-02172, Paper 11 (PTAB Feb. 21, 2018) (Appx0297-300). *Complete Genomics, Inc. v. Illumina Cambridge Ltd.*, IPR2017-02174, Paper 11 (PTAB Feb. 21, 2018) (Appx0513-516).  They did not bother to respond to the allegedly fraudulent *Boyer* arguments that Illumina had made.  *See Complete Genomics, Inc. v. Illumina Cambridge Ltd.*, IPR2017-02172, Paper 14 (PTAB Feb. 28, 2018) (Appx0301-312); *Complete Genomics, Inc. v. Illumina Cambridge Ltd.*, IPR2017-02174, Paper 14 (PTAB Feb. 28, 2018) (Appx0517-528).  Nor did Defendants seek to file a sanctions motion based on what they now allege is fraudulent misconduct.  Defendants have no legitimate excuse for failing to pursue these remedies if their allegations in this were plausible.

Third, Defendants filed a reconsideration motion, but the motion did not seek to correct the alleged *Boyer*-related misrepresentations.  *See Complete Genomics, Inc. v. Illumina Cambridge Ltd.*, IPR2017-02172, Paper 21 (PTAB May 21, 2018) (Appx0334-350); *Complete Genomics, Inc. v. Illumina Cambridge Ltd.*, IPR2017-02174, Paper 21 (PTAB May 21, 2018) (Appx0568-587).  It is implausible that Illumina's attorneys made material misrepresentations about *Boyer* but that Defendants did not find it worthwhile to even respond when they had multiple opportunities to do so.  This is especially true because Defendants contend that a simple reading of *Boyer* would have revealed the supposed fraud.

Fourth, Defendants' allegation that Illumina's attorneys misrepresented *Boyer* is implausible on its face.  Defendants contend that Illumina falsely argued that *Boyer* shows that the extra atoms of azidomethyl would prevent a polymerase from incorporating an azidomethyl nucleotide.  Dkt. No. 54 at 54-55 (¶ 259).  And then they quote Illumina's argument.  Illumina's argument never mentions extra atoms much less that *Boyer* states that such atoms preclude incorporation.  Throughout their allegations, Defendants' characterization of Illumina's arguments do not square with those arguments as they were actually made.  Such an inequitable conduct allegation is implausible.

**E.     Defendants' "*Stanton*[12]" Argument Is Implausible**

Defendants allege that Illumina's attorneys intentionally misrepresented *Stanton* in response to Defendants' IPRs.  Dkt. No. 54 at 58-64 (¶¶ 272-286).  As established below, this inequitable conduct allegation is implausible.

First, Defendants argue that a "simple review of *Stanton*" would have exposed Illumina's alleged misrepresentations and that Illumina's statements about that reference are "plainly false." *Id.* at 60-61 (¶¶ 275, 277).  Defendants' inference that Illumina's attorneys would make manifestly false arguments to try to defraud a sophisticated set of judges about *Stanton* is dubious.  The judges had *Stanton* before them and were free to independently evaluate this evidence—and did—and found Illumina's arguments to be more credible.  Defendants had the full opportunity to seek a reply to make whatever arguments they wanted about that reference before the PTAB rejected its petitions.  Again, making intentional misrepresentations to a panel of judges with an IPR adversary that includes Defendants' technology-credentialed attorneys makes this theory even more far-fetched.   Defendants' allegation is implausible.

Second, Defendants sought and received permission to file a reply brief.  *Complete Genomics, Inc. v. Illumina Cambridge Ltd.*, IPR2017-02172, Paper 11 (PTAB Feb. 21, 2018) (Appx0297-300); *Complete Genomics, Inc. v. Illumina Cambridge Ltd.*, IPR2017-02174, Paper 11 (PTAB Feb. 21, 2018) (Appx0513-516).  They did not bother to respond to the allegedly fraudulent *Stanton* arguments that Illumina had made.  *See Complete Genomics, Inc. v. Illumina Cambridge Ltd.*, IPR2017-02172, Paper 14 (PTAB Feb. 28, 2018) (Appx0301-312); *Complete Genomics, Inc. v. Illumina Cambridge Ltd.*, IPR2017-02174, Paper 14 (PTAB Feb. 28, 2018) (Appx0517-528).  Nor did Defendants seek to file a sanctions motion based on what they now allege is fraudulent misconduct.  Defendants have no legitimate excuse for failing to pursue these remedies if their allegations in this were plausible.

Third, Defendants also argue that Illumina's attorneys voluntarily submitted numerous exhibits to the PTAB panel that "disclosed exactly what counsel argued Stanton taught away from."  Dkt. No. 54 at 61 (¶ 278).  It is implausible that attorneys scheming to intentionally deceive a sophisticated panel of technically educated judges would submit exhibits that expose their own alleged fraud.

---

[12] Vincent P. Stanton et al., WO 02/21098 A2 (publ. Sept. 5, 2000) (Dkt. No. 54-24).

Fourth, in the Qiagen IPRs, Illumina made the same arguments regarding *Stanton* about which Defendants now complain. *See Intelligent Bio-Systems, Inc. v. Illumina Cambridge Ltd.*, IPR2013-00517, Paper 64 at 2 (PTAB Sept. 2, 2014) (Appx0155-173 at Appx0158). Yet, Defendants submitted *Stanton* in support of their own IPRs and did not even attempt to respond to Illumina's arguments that they now allege are material misrepresentations. *See Complete Genomics, Inc. v. Illumina Cambridge Ltd.*, IPR2017-02172, Paper 1 (PTAB Oct. 5, 2017) (Appx0218-296); *Complete Genomics, Inc. v. Illumina Cambridge Ltd.*, IPR2017-02174, Paper 1 (PTAB Oct. 5, 2017) (Appx0362-441). It is implausible that, if Defendants believed that Illumina was making material misrepresentations regarding *Stanton* to win a prior IPR that they would not attempt to address them in their own petition seeking another bite at the apple. It is even more implausible because Defendants filed a reply to Illumina's submission, but Defendants chose not to mention a thing about any alleged material misrepresentations related to *Stanton*. *See Complete Genomics, Inc. v. Illumina Cambridge Ltd.*, IPR2017-02172, Paper 14 (PTAB Feb. 28, 2018) (Appx0301-312); *Complete Genomics, Inc. v. Illumina Cambridge Ltd.*, IPR2017-02174, Paper 14 (PTAB Feb. 28, 2018) (Appx0517-528). Nor did Defendants seek to bring a sanctions motion for the supposed misconduct.

Fifth, the PTAB judges, in their decision refusing to institute Defendants' IPR, reviewed *Stanton* for themselves and noted that Defendants failed to address the substance of *Stanton* that they found unfavorable to Defendants' petition. *See Complete Genomics, Inc. v. Illumina Cambridge Ltd.*, IPR2017-02174, Paper 20 (PTAB Apr. 20, 2018) (Appx0529-567) ("Patent Owner contends it raised Stanton's disclosures about DNA degradation when TCEP is used in the prior IPR (IPR2013-00517), yet the Petition fails to address this evidence. Prelim. Resp. 43 (citing Ex. 2031 ¶ 5)."). This renders Defendants' materiality argument implausible. Defendants simply lost on the merits.

Sixth, after the PTAB refused institution for Defendants' petitions, Defendants requested reconsideration and attempted to respond to *Stanton* for the first time, but never accused Illumina's attorneys of making misrepresentations. *Complete Genomics, Inc. v. Illumina Cambridge Ltd.*, IPR2017-02174, Paper 21 at 9-11 (PTAB May 21, 2018) (Appx0568-587 at Appx0579-581). The PTAB judges, after their independent review of the matter, agreed with Illumina and found Defendants' arguments (contained in a footnote) lacking:

> After considering the information in the Petition and the Preliminary Response, however, we were persuaded that the intermediate amine products would be considered potentially harmful to the DNA backbone in view of at least Stanton. Dec. 33. Petitioner's contentions (primarily made in a footnote) failed to address Patent Owner's argument and evidence on this point in a sufficiently clear, direct, and persuasive way. Nor does Petitioner's expert squarely address Stanton (and the relevant disclosures cited by Patent Owner) in the portion of the declaration cited.

*Complete Genomics, Inc. v. Illumina Cambridge Ltd.*, IPR2017-02174, Paper 22 at 8 (PTAB Aug. 2, 2018) (Appx0588-601 at Appx0595). That Defendants reduce their response to Illumina's *Stanton* arguments to an unpersuasive footnote in its reconsideration motion renders their allegation that Illumina had made material misrepresentations related to that reference implausible.

Seventh, Illumina argued that *Stanton* would create concern to one skilled in the art attempting to piece together the prior art, rather than that one would read *Stanton* and absolutely believe that the invention would not work. Defendants confuse those two different points. The PTAB did not. Defendants' failure to set forth an actual misrepresentation, let alone one that materially misled the PTAB, makes this inequitable conduct theory implausible.

## IV.  DEFENDANTS' AFFIRMATIVE DEFENSES WITHOUT ANY FACTUAL SUPPORT SHOULD BE STRICKEN TOO

Defendants include in their Answer a laundry list of affirmative defenses. Illumina moves to strike six affirmative defenses that lack any factual support, including Defendants' Third (Prosecution Laches), Fourth (Prosecution History Estoppel), Sixth (Statute of Limitations), Seventh (35 U.S.C. § 287), Ninth (No Enhanced Damages), and Tenth (No Exceptional Case) Affirmative Defenses. These six affirmative defenses mirror the affirmative defenses that this Court previously found factually insufficient and struck in *Blackberry. See Blackberry,* 2014 WL 1867009, at *5 (holding the *Twombly/Iqbal* standard applies to affirmative defenses and striking defendant's affirmative defenses for insufficient factual pleading). The Court should find Defendants have inadequately pleaded their Third, Fourth, Sixth, Seventh, Ninth, and Tenth Affirmative Defenses and should strike these defenses as well. In addition, Defendants' Twelfth Affirmative Defense (Unclean Hands) should be stricken because it is only based on Defendants' legally inadequate inequitable conduct allegations.

## V.   DEFENDANTS' INDUCED INFRINGEMENT COUNTERCLAIM AND WILLFULNESS ALLEGATIONS SHOULD BE DISMISSED

### A.   Defendants' Inducement Patent Infringement Claim Should Be Dismissed

"For an allegation of induced infringement to survive a motion to dismiss, a complaint must plead facts plausibly showing that the accused infringer specifically intended [another party] to infringe [the patent] and knew that the [other party]'s acts constituted infringement." *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017) (internal quotations and citations omitted).

Defendants' inducement claim for U.S. Patent No. 9,944,984 (the "'984 Patent") is defective as the only allegations of inducement are:

> 69.   . . . Illumina's customers directly infringe at least claims 1-3 and 5 the '984 Patent when they use Illumina's HiSeq X, HiSeq 3000/4000, and NovaSeq 6000 systems in combination with the recommended Illumina reagent kits, which comprise patterned flow cells.  Illumina actively induces infringement by its customers by selling the HiSeq X, HiSeq 3000/4000, and NovaSeq 6000 systems, and their corresponding reagent kits and sequencing kits for use in a manner that infringes at least claims 1-3 and 5 of the '984 Patent, instructing its customers to use these products together in an infringing manner, providing qualification of the infringing methods, and by providing marketing materials, user guides, technical literature, and bioinformatics software applications to support its customers' infringing use.

> 70.   On information and belief, Illumina has had knowledge of the '984 Patent since at least April 17, 2018 (the issue date of the '984 Patent) or shortly thereafter.  On information and belief, Illumina is a sophisticated, multinational company that regularly monitors patent issuance in related fields, and therefore became aware of the '984 Patent upon issuance or shortly thereafter. On information and belief, Illumina acted with knowledge that the induced acts constitute infringement or willful blindness with regards to its customers' infringement of the '984 Patent.  At the very least, service of this complaint provides Illumina with notice of the '984 Patent such that acts following such notice will be with knowledge that the induced acts constitute infringement.

> 79.   On information and belief, with knowledge of the '984 Patent, Illumina has and will continue to actively induce others to infringe at least claims 1-3 and 5 of the '984 Patent in violation of 35 U.S.C. §271(b) by, at least, causing, instructing, urging, encouraging, and/or aiding its customers to directly infringe at least claims 1-3, and 5 of the '984 Patent by using Illumina's NovaSeq 6000, HiSeq 3000/4000, and/or HiSeqX sequencers with their respective reagents kits, as detailed in Paragraphs 1 to 75, above.

Dkt. No. 54 at 93, 95-96 (¶¶ 69-70, 79).

These vague, scattershot allegations are insufficient. First, there is no allegation whatsoever regarding the particularized intent required to induce infringement. *See CAP Co., Ltd. v. McAfee, Inc.*, No. 14-cv-05068-JD, 2015 WL 3945875, at *5 (N.D. Cal. June 26, 2015) ("Because CAP has not alleged facts that plausibly support an inference that defendants specifically intended others to infringe the patents-in-suit, the Court dismisses CAP's claims of induced infringement.").

Second, as to knowledge of the '984 Patent, the only allegations Defendants make appear to be related to willfulness, not induced infringement. Regardless, Defendants at most state: "On information and belief, Illumina is a sophisticated, multinational company that regularly monitors patent issuance in related fields, and therefore became aware of the '984 Patent upon issuance or shortly thereafter. *See* Dkt. No. 54 at 93, 95 (¶¶ 70, 78). This is insufficient, and is nothing more than an improper attempt to allege pre-suit knowledge based on speculation. *See, e.g., Lippert Components Mfg., Inc. v. MOR/ryde, Inc.*, No. 3:16-cv-263 RLM-MGG, 2018 WL 345767, at *2 (N.D. Ind. Jan. 10, 2018) (dismissing claim for indirect infringement where allegations of knowledge were based on "information and belief" that accused infringer knew of patents by virtue of status as industry competitor that would monitor patents).

Because Defendants' counterclaim is bereft of any allegations directed to the required elements of inducement, Defendants' claims for inducement should be dismissed.

## B. Defendants' Willfulness Allegations Should Be Dismissed

Defendants' willful infringement allegations are included in several conclusory paragraphs that include no factual support whatsoever. Defendants' allegations are as follows:

> On information and belief, Illumina has had knowledge of the '984 Patent since at least April 17, 2018 (the issue date of the '984 Patent) or shortly thereafter. On information and belief, Illumina is a sophisticated, multinational company that regularly monitors patent issuance in related fields, and therefore became aware of the '984 Patent upon issuance or shortly thereafter.

> On information and belief, Illumina's infringement of the '984 Patent has been willful and deliberate since learning of the issuance of the '984 Patent.

Dkt. No. 54 at 93, 95, 97 (¶¶ 70, 75, 78, 84).

These allegations are insufficient to state a claim for willful infringement.

First, Defendants' allegations of pre-suit knowledge based on "information and belief" that Illumina "monitors" patent filings are nothing but speculation. Such threadbare speculative allegations based on nothing but "information and belief" are insufficient under *Iqbal* and *Twombly*. *See, e.g., Elec. Scripting Prods., Inc. v. HTC Am. Inc.*, No. 17-cv-05806-RS, 2018 WL 1367324, at *6 (N.D. Cal. Mar. 16, 2018) ("Nor are ESPI's allegations regarding 'defendant's exercise of due diligence pertaining to intellectual property affecting its Devices,' *id.* ¶ 13, sufficient to establish knowledge."); *Scripps Research Inst. v. Illumina, Inc.*, No. 16-cv-661 JLS (BGS), 2016 WL 6834024, at *7 (S.D. Cal. Nov. 21, 2016) (dismissing willful infringement where pre-suit knowledge allegations were based "on information and belief" that defendant was aware of patents-in-suit by virtue of having licensed other patents from the same inventor); *Zond, LLC v. Renesas Elecs. Corp.*, No. 13-cv-11625-NMG, 2014 WL 4161348, at *5-6 (D. Mass. Aug. 15, 2014) (dismissing willful infringement allegation based on "information and belief" that accused infringer learned of patent through tradeshow attendance, explaining that "sparse and speculative allegations are insufficient to state a claim to relief under the pleading standard articulated in *Twombly* and *Iqbal*"); *Lippert Components*, 2018 WL 345767, at *2 (finding insufficient pre-suit knowledge allegations based on "information and belief" that accused infringer knew of patents by virtue of status as industry competitor that would monitor patents).

Second, given Defendants' deficient pleading of pre-suit knowledge, its attempt to plead the requisite intent and conduct for willfulness is also deficient. *See, e.g., Software Res., Inc. v. Dynatrace LLC*, 316 F. Supp.3d 1112, 1137 (N.D. Cal. 2018) ("[Plaintiff] fails to plausibly allege pre-suit knowledge by [Defendant]. [Plaintiff] does not allege that it notified [Defendant] of any of the asserted patents themselves or discussed them with [Defendant] before filing suit. Hence, [Plaintiff] does not allege facts which amount to 'willful, wanton, malicious, bad- faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate.' The Court thus GRANTS [Defendant's] motion to dismiss [Plaintiff's] willful infringement claims.") (internal citation omitted). Here, Defendants' pleadings contain no facts to support such an assertion and, further, do not even recite the legal standard for willful infringement. *See* Dkt. No. 54 at 93, 95, 97 (¶¶ 70, 75, 78, 84). This is insufficient. *See, e.g., Elec. Scripting,* 2018 WL 1367324, at *7 ("ESPI must provide factual allegations that are specific to HTC's conduct and do not merely recite the elements of the statutory violations, but rather provide

factual material that puts HTC on notice of its allegedly unlawful actions."); *Jenkins v. LogicMark, LLC*, No. 3:16-cv-751-HEH, 2017 WL 376154, at \*5 (E.D. Va. Jan. 25, 2017) ("The Court finds that this mere recitation of elements fails to meet the mark.").

Because Defendants' willful infringement allegations are insufficiently pleaded, they should be dismissed along with Defendants' request for treble damages pursuant to 35 U.S.C. § 284.

## VI.    CONCLUSION

For the foregoing reasons, Illumina respectfully requests that the Court strike and dismiss Defendants' Third, Fourth, Sixth, Seventh, Ninth, Tenth, Eleventh and Twelfth Affirmative Defenses, dismiss Defendants' inducement patent infringement claims, and dismiss Defendants' willful infringement allegations and request for enhanced damages.


Date:  November 4, 2019          */s/ Edward R. Reines*

EDWARD R. REINES (Bar No. 135960)
DEREK C. WALTER (Bar No. 246322)
CHRISTOPHER S. LAVIN (Bar No. 301702)
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Tel: (650) 802-3000
Fax: (650) 802-3100
edward.reines@weil.com
derek.walter@weil.com
christopher.lavin@weil.com

STEPHEN BOSCO (*pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
2001 M Street
Washington, DC  20036
Tel:  (202) 682-7000
Fax:   (202) 857-0940
stephen.bosco@weil.com

Attorneys for Plaintiffs/Counterclaim-Defendants
ILLUMINA, INC. and ILLUMINA CAMBRIDGE LTD.