UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ILLUMINA, INC., et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>BGI GENOMICS CO., LTD, et al.,<br><br>　　　　　Defendants. | Case No. 19-cv-03770-WHO<br><br>**ORDER GRANTING PLAINTIFFS' MOTION TO STRIKE AND GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO DISMISS** |

　　　Defendants BGI Genomics Co., Ltd., BGI Americas Corp., MGI Tech. Co., Ltd., MGI Americas, Inc., and Complete Genomics Inc. (collectively, "CGI") seek to state an inequitable conduct defense against plaintiffs Illumina, Inc. and Illumina Cambridge Ltd. (collectively, "Illumina"). CGI asserts that various arguments regarding prior art made by Illumina's attorneys in prior invalidity proceedings were patently false and misleading and made with the intent to deceive the U.S. Patent Trial and Appeal Board ("PTAB") and the Federal Circuit Court of Appeals. Its allegations, however, do little more than challenge attorney interpretations of prior art that were litigated and decided on multiple occasions; they do not arise to the level of inequitable conduct. CGI further fails to adequately plead its Third, Fourth, Sixth, Seventh, Ninth, Tenth, and Twelfth affirmative defenses. Accordingly, Illumina's motion to strike is GRANTED. CGI's counterclaim for willful infringement fails because it does not adequately allege knowledge of the patent at issue at the relevant time. It has adequately pleaded its counterclaim based on induced infringement. Illumina's motion to dismiss is GRANTED IN PART AND DENIED IN PART.

**BACKGROUND**

　　　Illumina filed this action on June 27, 2019. After it amended its complaint, CGI filed an

Answer to the Amended Complaint on September 30, 2019, asserting twelve affirmative defenses and one count of infringement of one of its own patents. Dkt. Nos. 1, 52, and 54 (Answer and Counterclaims). Illumina then filed a Motion to Strike CGI's Third, Fourth, Sixth, Seventh, Ninth, Tenth, Eleventh, and Twelfth affirmative defenses, and a Motion to Dismiss CGI's allegations of induced infringement and willful infringement and the accompanying request for damages. Dkt. No. 65.

**LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure 12(f), "[t]he Court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. Fed. R. Civ. P. 12(f). "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (citation omitted). Motions to strike should only be granted if "the matter has no logical connection to the controversy at issue and may prejudice one or more of the parties to the suit." *Finjan, Inc. v. Check Point Software Techs., Inc.*, No. 18-CV-02621-WHO, 2019 WL 330912, at *2 (N.D. Cal. Jan. 25, 2019) (citation omitted).

A district court must dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555, 570.

**DISCUSSION**

## I.   MOTION TO STRIKE

### A.   Inequitable Conduct and Unclean Hands

To state a claim for inequitable conduct, a party must allege that "(1) an individual associated with the filing and prosecution of a patent application made an affirmative misrepresentation of a material fact, failed to disclose material information, or submitted false material information; and (2) the individual did so with a specific intent to deceive the PTO." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 n.3 (Fed. Cir. 2009) (citation omitted). Allegations of inequitable conduct must be pleaded with particularity pursuant to Federal Rule of Civil Procedure 9(b), which requires that the pleadings "identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Id.* at 1328. To meet the intent prong, the pleading "must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Id.* at 1328–29. I have held that at the pleading stage, an inference of deceptive intent must be reasonable and drawn from the allegations of underlying fact. *See Finjan, Inc. v. Check Point Software Techs., Inc.*, No. 18-cv-02621-WHO, 2019 WL 330912, at *4 (N.D. Cal. Jan. 25, 2019). "A reasonable inference is one that is plausible and that flows logically from the facts alleged, including any objective indications of candor and good faith." *Exergen*, 575 F.3d at 1329 n.5.

CGI's defense of inequitable conduct is based on four categories of false representations made repeatedly by Illumina, through at least ten of its attorneys and one of its experts, to the PTAB and the Federal Circuit.[1] Dkt. No. 54 (Answer) ¶¶ 36-64. The misrepresentations are broadly that (1) Illumina falsely conflated the terms reaction "efficiency" and reaction "yield" in the "Loubinoux" and other prior art references when the terms were in fact meaningfully distinct;

---

[1] These included two *Inter Partes* review ("IPR") petitions filed by Intelligent Bio-Systems (also referred to the parties in the briefing as Qiagen) in 2013, which was reviewed by the PTAB and the Federal Circuit; and two IPR petitions filed by CGI in 2018, which was reviewed by the PTAB.

3

1  (2) Illumina made false statements regarding the flexibility and shape of a particular molecule, the "Azidomethyl" group; (3) Illumina misleadingly characterized the "Boyer" prior art reference and omitted key passages regarding the behavior and interactions of the "AZT" molecule; and (4) Illumina made false statements and misleading omissions that certain molecules would degrade DNA strands when in fact they would not. *Id.*

CGI claims that each of these false statements mischaracterizes or falsifies various prior art references, and ultimately misled the PTAB and the Federal Circuit into concluding that the claimed invention was non-obvious, and that Illumina's patents were not invalid.

### 1.     Alleged Misrepresentations

The Federal Circuit has held that while "genuine misrepresentations of material fact" regarding prior art may be grounds for an inequitable conduct claim, "a prosecuting attorney is free to present argument in favor of patentability without fear of committing inequitable conduct." *Rothman v. Target Corp.*, 556 F.3d 1310, 1328–29 (Fed. Cir. 2009).  "[A]ttorney argument and an interpretation of what the prior art discloses," including attempts to distinguish patent claims from prior art, do not constitute affirmative misrepresentations of material fact. *Young v. Lumenis, Inc.*, 492 F.3d 1336, 1349 (Fed. Cir. 2007).  Inequitable conduct cannot be based upon attorney argument regarding prior art in part because it is submitted to the "patent examiner to examine herself, [who is] free to accept or reject the patentee's arguments distinguishing its invention from the prior art." *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1379 (Fed. Cir. 2008). However, the court has recognized certain situations where genuine misrepresentations of material fact regarding a prior art reference may support an inequitable conduct claim, such as where a party translated only a portion of a foreign reference and characterized it misleadingly, amounting to "constructively with[holding]" the prior art. *Semiconductor Energy Lab. Co. v. Samsung Elecs. Co.*, 204 F.3d 1368, 1377 (Fed. Cir. 2000).

In accordance with Federal Circuit law, district courts have not permitted inequitable conduct defenses based solely on attorney argument regarding prior art references.  In *Wright Asphalt Prod. Co., LLC v. Pelican Ref. Co., LLC*, the court discussed in detail Federal Circuit law governing when false or misleading arguments regarding prior art may constitute inequitable

4

conduct. No. 09-cv-1145, 2011 WL 2037631, at *6–11 (S.D. Tex. May 20, 2011). It concluded that "as a general rule, when the relevant prior art is disclosed to the examiner, attorney statements emphasizing differences between the invention and the prior art while downplaying or ignoring similarities cannot be inequitable conduct unless the prior art reference is so difficult to understand that omitting or understating aspects is functionally equivalent to not disclosing the prior art reference at all." *Id.* at *9; *see also McKechnie Vehicle Components USA, Inc. v. Lacks Indus., Inc.*, No. 09-cv-11594, 2010 WL 4643081, at *6 (E.D. Mich. Nov. 9, 2010) ("if a person of skill in the art would understand a disclosed piece of prior art to teach a certain fact relevant to the prosecution of the patent in suit, and an applicant's statement distorts or otherwise misrepresents that fact, that statement can serve as the basis for inequitable conduct charges.").

The same reasoning applies to allegations of inequitable conduct based upon alleged attorney misrepresentations or omissions of prior art before a patent examiner. *Nevro Corp. v. Bos. Sci. Corp.*, No. 16-cv-06830-VC, 2017 WL 7795778, at *1 (N.D. Cal. Oct. 4, 2017) (granting motion to strike because "while an inventor must disclose all material information to the patent examiner, he is not required to make sure the patent examiner understands that information" and noting that information was not exclusively within inventor's possession); *Lakim Indus., Inc. v. Linzer Prod. Corp.*, No. 12-cv-04976-ODW(JEMX), 2012 WL 12547988, at *3 (C.D. Cal. Nov. 7, 2012) (alleged misrepresentations of prior art to patent examiner not sufficient to plead inequitable conduct); *VDF FutureCeuticals, Inc. v. Sandwich Isles Trading Co.*, No. 11-cv-00288 ACK, 2011 WL 6820122, at *6 (D. Haw. Dec. 27, 2011).

Construing CGI's allegations in the most favorable light to it, the purported misrepresentations at most constitute attorney argument regarding how prior art should be interpreted, not demonstrably false statements. Throughout CGI's nearly thirty pages of allegations, it lists numerous instances where it claims that Illumina falsely characterized, misconstrued, or omitted key passages of several prior art references. These allegations are similar to those in *Wright*, in which the defendants alleged that the prior art disclosed far more than the patentee claimed; that the patent attorney drew the examiner's attention away from critical parts of the patent that were contrary to her position; that the patent attorney misleadingly

5

relied upon irrelevant portions of the prior art; and that the patent attorney made claims about the prior art's teaching that were not substantiated. 2011 WL 2037631, at *3–4, 10–11.

None of the alleged representations here rises to the level of "not disclosing the prior art reference at all," *Wright*, 2011 WL 2037631, at *9. CGI does not dispute that all of the references were available to the PTAB and considered by it, and that opposing counsel could and at times did challenge Illumina's interpretations. As Illumina points out, there was no attempt to sanction Illumina's legal team during the prior proceedings. I am not persuaded that any of the statements by Illumina were patently and demonstrably false. Rather, Illumina permissibly "downplay[ed] or ignor[ed] similarities" between the prior art and the patented invention. *Id.*; *see also 3M Co. v. Moldex-Metric, Inc.*, No. 03-cv-5292(MJDAJB), 2008 WL 3371257, at *10–11 (D. Minn. Aug. 8, 2008) (alleged misrepresentations regarding structures and configurations of prior art not factual assertions giving rise to inequitable conduct claim).

The underlying decisions of the PTAB and Federal Circuit reinforce my conclusion that each of the allegedly false statements was permissible attorney argument and also indicate that some or all of the statements were not material to those courts' decisions. With respect to Illumina's statements regarding efficiency and yield, the decision cited by CGI[2] indicates that the PTAB was aware of CGI's position that "Loubinoux's pure product yields of 60 to 80 percent [] would have been viewed as a 'poor proxy for actual reaction efficiency,'" and rejected it. *See* Dkt. No. 54-7 at 17 ("even if we were to overlook the procedural infirmities in Petitioner's Reply arguments [regarding yield and efficiency], we do not find them persuasive."). The PTAB then went on to credit opposing counsel's position but found that it did not change its underlying conclusion. *Id.* at 17-18. The Federal Circuit affirmed this opinion, reaching its own conclusion with regard to the meaning of "yield" and "efficiency." *Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd.*, 821 F.3d 1359, 1368 (Fed. Cir. 2016) (Loubinoux … teaches that azidomethyl methyl groups are removed from phenols with modest efficiency (60–80% yield)").

---

[2] The decisions of the PTAB and Federal Circuit are alleged in the complaint and may be considered in ruling on a motion to dismiss. *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012).

With respect to Illumina's statements regarding the "Azidomethyl" group, the PTAB addressed upon request for rehearing CGI's argument that "the Board gave inappropriate weight to Patent Owner's misleading and factually incorrect assertions about the size, rigidity, and steric bulk of the azidomethyl group." Dkt. No. 65-1 at 596 (citation omitted). It found that even if it was to agree with CGI on this point "the record reflects several other discouraging factors with the use of an azidomethyl group." *Id.* at 599.

In discussing the "Boyer" reference, the PTAB faulted CGI for failing to show "that the ordinarily skilled person would have predictably turned to an azidomethyl group based on its allegedly small size." *Id.* at 563. And, as Illumina notes, CGI never attempted to correct this record in subsequent filings. *See* Mot. 16. Similarly, the PTAB stated that CGI failed to address Illumina's arguments about the "Stanton" reference regarding DNA degradation and stated that "we are persuaded this evidence is yet another factor that would have discouraged the ordinarily skilled person from pursuing the modification of the prior art proposed by Petitioner." Dkt. No. 65-1 at 562. For all of these reasons, Illumina's statements are, as a matter of law, permissible attorney attempts to distinguish prior art about which reasonable minds may differ.

Finally, CGI names eleven individuals that purportedly made the false statements, yet it focuses almost entirely on statements by Illumina's expert and just lumps in the attorneys where their names appeared on the papers. *See*, e.g., Dkt. No. 54 (Answer) ¶ 222. At least with respect to the attorneys, this is not sufficient to plead the "who" of the alleged misrepresentations pursuant to Rule 9(b). *See Fujifilm Corp. v. Motorola Mobility LLC*, No. 12-cv-03587-WHO, 2014 WL 2730724, at *4 (N.D. Cal. June 16, 2014); *BlackBerry Ltd. v. Typo Prod. LLC*, No. 14-cv-00023-WHO, 2014 WL 1867009, at *1–2 (N.D. Cal. May 8, 2014).

CGI fails to satisfy the first prong of its inequitable conduct defense.

### 2. Illumina's alleged specific intent

CGI fails to satisfy *Exergen's* second requirement because it fails to allege facts from which a court can reasonably infer that a specific individual withheld or misrepresented material information with intent to deceive the PTAB and the Federal Circuit. *Exergen,* 575 F.3d at 1328–29.

7

CGI's allegations state that because the statements to the PTAB and the Federal Circuit were demonstrably false, the attorneys and expert must have known of the falsity of these statements based on their experience and must have acted with a specific intent to deceive those bodies. *See*, e.g., Dkt. No. 54 (Answer) ¶¶ 230, 250, 267 (citing "high academic achievement in the relevant sciences"). But these allegations are conclusory and do not adequately plead knowledge or intent. *See,* e.g. *BlackBerry*, 2014 WL 1867009, at *2 (conclusory allegation that six attorneys' failure to disclose material information was inadequate); *Juniper Networks v. Shipley*, No. 09-cv-0696 SBA, 2009 WL 1381873, at *4 (N.D. Cal. May 14, 2009) (conclusory allegations that defendant "knew" his reference to the patents was "false" insufficient to plead an intent to deceive). And, as discussed above, CGI does not adequately identify the specific individual or individuals that made these alleged misrepresentations.

Moreover, the allegations do not support an inference that Illumina's attorneys and expert acted with knowledge and intent to deceive. CGI is correct that a party may fraudulently mislead judges and attorneys during adversarial proceedings, such as IRR proceedings. *See Finjan, Inc. v. Cisco Sys., Inc.*, No. 17-cv-00072-BLF, 2018 WL 4361134, at *6 (N.D. Cal. Sept. 13, 2018). However, the context of the proceeding is not irrelevant to intent to deceive. The alleged statements were made while Illumina was defending multiple challenges to the validity of its patents brought by adverse parties. In these circumstances, rigorous advocacy would require Illumina's legal team to advance all plausible arguments before the tribunals and opposing counsel to attack those arguments. The alleged misrepresentations and/or false statements all pertain to a construction of various prior art references that were available to the opposing parties and the decision-makers. In fact, CGI alleges that many of the alleged misstatements by Illumina were contradicted by materials submitted *by Illumina* to the PTAB and Federal Circuit. In some instances, Illumina cited the evidence that purportedly demonstrates the falsity of the arguments that it was advancing, and in others, CGI's attorneys elicited the "truth" from Illumina's expert at deposition. Oppo. 10; Dkt. No. 54 (Answer) ¶ 225.

Without any other facts, it is implausible that Illumina's attorneys and their expert would knowingly make patently false statements about prior art that were contradicted by materials they

8

cited and that could be readily exposed by the opposing party, and potentially even sanctioned by the tribunal. *Rothman*, 556 F.3d at 1329 ("this type of conclusory analysis [that attorney falsely represented prior art to examiner] betrays no intent to deceive the PTO and obtain a patent with objectively false information. Rather, it is an attempt to characterize the prior art in a manner favorable to the attorney's client—far from deception."); *Pfizer Inc. v. Sandoz Inc.*, No. CV 12-654-GMS/MPT, 2013 WL 5934635, at *6 (D. Del. Nov. 4, 2013) (allegations that inventor made a false and material statements are not sufficient to draw an inference of specific intent to deceive); *Xitronix Corp. v. KLA-Tencor Corp.*, No. 08-cv-723-SS, 2010 WL 11507169, at *7 (W.D. Tex. Oct. 27, 2010) (statements that are "merely attorney argument attempting to highlight some key differences between the pending claims and [prior art reference] … cannot legally support an inference of intent to deceive").

CGI does not contend that the prior art was so complex that the PTAB and the Federal Circuit could not evaluate it and reach their own conclusions. *Wright*, 2011 WL 2037631, at *9. To the contrary, the Answer describes the alleged misrepresentations to be contrary to "basic tenants [sic] of organic chemistry," "the face of [the reference]," and "widely understood" principles. Dkt. No. 54 (Answer) ¶¶ 246, 257, 261. The PTAB and Federal Circuit independently evaluated the prior art, at times with the benefit of CGI's arguments attacking Illumina's position. Accordingly, CGI's allegations regarding knowledge and intent are implausible, and fail to satisfy the second prong of its inequitable conduct defense.

Because CGI cannot allege a defense of inequitable conduct as a matter of law, its Eleventh affirmative defense is struck without leave to amend. CGI's Twelfth affirmative defense of unclean hands defense is based upon the same conduct and is also struck without leave to amend.

### B. Remaining Affirmative Defenses

Illumina moves to strike CGI's Third (prosecution laches), Fourth (prosecution history estoppel), Sixth (statute of limitations), Seventh (35 U.S.C. § 287), Ninth (no enhanced damages), and Tenth (no exceptional case) affirmative defenses. In its response, CGI voluntarily dismissed its Fourth and Seventh Affirmative defenses. Reply 21.

9

I apply the *Twombly/Iqbal* pleading standard to affirmative defenses. *Intel Corp. v. Tela Innovations, Inc.*, No. 3:18-CV-02848-WHO, 2019 WL 2476620, at *10 (N.D. Cal. June 13, 2019); *Synopsys, Inc. v. Ubiquiti Networks, Inc.*, No. 17-cv-00561-WHO, 2017 WL 3485881, at *18 (N.D. Cal. Aug. 15, 2017). Under this standard, a party need only plead some factual support for its affirmative defense, but "the simple listing of a series of conclusory statements asserting the existence of an affirmative defense without stating a reason why that affirmative defense might exist is not sufficient." *Intel*, 2019 WL 2476620, at *10 (internal citation and quotations omitted).

CGI's Third, Sixth, Ninth, and Tenth affirmative defenses consist of a one-sentence assertion of each defense. Although CGI includes nearly thirty pages of allegations pertaining to its inequitable conduct claim, it is not apparent that any of those factual allegations would support its Third or Sixth affirmative defenses. For example, the doctrine of prosecution laches provides that an unreasonable and unexpected delay in prosecution of a patent that constitutes an "egregious misuse of the statutory patent system under the totality of the circumstances" may render a patent unenforceable. *Finjan*, 2018 WL 4361134, at *2. CGI's Answer contains no facts that provide any support or context for this claim. It also fails to identify the applicable statute of limitations or provide even a brief statement as to how Illumina's claims are barred by this doctrine.

CGI's Ninth and Tenth affirmative defenses of no enhanced damages and no exceptional case are not true affirmative defenses. *See Zivkovic v. S. California Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002) ("A defense which demonstrates that plaintiff has not met its burden of proof is not an affirmative defense."); *Classical Silk, Inc. v. Dolan Grp., Inc.*, No. V1409224ABMRWX, 2016 WL 7638112, at *2 (C.D. Cal. Mar. 21, 2016) (finding defenses that enhanced damages and/or attorneys' fees are improper and not affirmative defenses). Accordingly, these defenses are redundant and are struck.

In sum, Illumina's Motion to Strike CGI's Third, Fourth, Sixth, Seventh, Ninth, and Tenth affirmative defenses is GRANTED WITH LEAVE TO AMEND.

## II. MOTION TO DISMISS

### A. Willful Infringement

To state a claim for willful infringement, a patentee must allege that the accused infringer

10

1  had knowledge of the patent prior to filing the lawsuit. *Word to Info, Inc. v. Google Inc.*, 140 F.
2  Supp. 3d 986, 989 (N.D. Cal. 2015). CGI is correct that it need only "make out the barest factual
3  assertion of knowledge" of the patent. *Finjan, Inc. v. Sophos, Inc.*, No. 14-cv-01197-WHO, 2015
4  WL 7075573, at *3 (N.D. Cal. Nov. 13, 2015) (citations omitted).

5      That said, merely stating that Illumina regularly monitors intellectual property in fields
6  related to its products will not suffice to state a claim of knowledge for the purposes of willful or
7  induced infringement. *Elec. Scripting Prod., Inc. v. HTC Am. Inc.*, No. 17-cv-05806-RS, 2018
8  WL 1367324, at *6 (N.D. Cal. Mar. 16, 2018) (allegations regarding "defendant's exercise of due
9  diligence pertaining to intellectual property affecting its Devices," not adequate); *Nanosys, Inc. v.*
10 *QD Vision, Inc.*, No. 16-cv-01957-YGR, 2016 WL 4943006, at *4 (N.D. Cal. Sept. 16, 2016)
11 (allegations that on "information and belief" employees were aware of patent filings through
12 industry activities were insufficient). The cases that CGI relies upon all include factual support of
13 the accused infringer's knowledge of the patent at issue through specific interactions with the
14 patented product. *See Sophos*, 2015 WL 7075573, at *2 (alleging that the accused infringer was in
15 possession of patented products that included notice of the patent); *Avocet Sports Tech., Inc. v.*
16 *Garmin Int'l, Inc.*, No. 11-cv-04049 JW, 2012 WL 2343163, at *2–3 (N.D. Cal. June 5, 2012)
17 (alleging that the accused infringer discussed the patented technology with the plaintiff). CGI's
18 allegations of post-suit knowledge are not relevant to its claims for willful infringement. *Mentor*
19 *Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1295 (Fed. Cir. 2017). Lacking such
20 allegations, CGI's claim for willful infringement is dismissed.

21     **B.  Induced Infringement**

22     "For an allegation of induced infringement to survive a motion to dismiss, a complaint
23 must plead facts plausibly showing that the accused infringer 'specifically intended [another party]
24 to infringe [the patent] and knew that the [other party]'s acts constituted infringement.'" *Nalco*
25 *Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1355 (Fed. Cir. 2018) (*citing Lifetime Indus., Inc. v.*
26 *Trim–Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017).

27     CGI has adequately pleaded induced infringement. It alleges that Illumina induces
28 infringement of CGI's patent by selling its products to customers for use in an infringing manner.

11

Dkt. No. 54 (Counterclaims) ¶ 69.  It states that Illumina provides customers with marketing materials, user guides, technical literature, and bioinformatics software applications that encourage infringing use.  *Id.*  Courts have regularly found such allegations to be adequate.  *See J & K IP Assets, LLC v. Armaspec, Inc.*, No. 17-cv-07308-WHO, 2018 WL 2047536, at *2 (N.D. Cal. May 2, 2018) (allegations that defendant had knowledge of the patent and specifically intended customers to infringe sufficient to state a claim for induced infringement); *Avocent Huntsville, LLC v. ZPE Sys., Inc.*, No. 3:17-CV-04319-WHO, 2018 WL 1411100, at *21 (N.D. Cal. Mar. 21, 2018) (providing instruction manuals and product literature with the intent that customers infringe is adequate to plead specific intent); *Nanosys, Inc. v. QD Vision, Inc.*, No. 16-cv-01957-YGR, 2016 WL 4943006, at *5 (N.D. Cal. Sept. 16, 2016) (same).

As discussed above, CGI's conclusory allegations that Illumina knew of the patent due to its routine monitoring of intellectual property are not adequate.  However, CGI may assert post-suit knowledge to support its claims of induced infringement.  *Nanosys*, 2016 WL 4943006, at *5.  Since CGI alleges that Illumina had knowledge upon service of the Counter-Complaint in this action on September 30, 2019, it has adequately alleged post-suit knowledge.  Dkt. No. 54 (Counterclaims) ¶ 70.  CGI's claim of induced infringement may proceed.

## CONCLUSION

For the above reasons, Illumina's motion to strike CGI's Eleventh and Twelfth affirmative defenses is GRANTED WITHOUT LEAVE TO AMEND and its motion to strike CGI's Third, Fourth, Sixth, Seventh, Ninth, and Tenth affirmative defenses is GRANTED WITH LEAVE TO AMEND.  Illumina's motion to dismiss is GRANTED IN PART and DENIED IN PART.  Any amended pleading shall be filed within 20 days of the date of this Order.

**IT IS SO ORDERED.**

Dated: February 5, 2020

William H. Orrick
United States District Judge