UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ILLUMINA, INC., et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>BGI GENOMICS CO., LTD, et al.,<br><br>    Defendants. | Case No. 19-cv-03770-WHO<br><br>**ORDER REGARDING MOTION FOR STAY OF PRELIMINARY INJUNCTION**<br><br>Re: Dkt. No. 202 |

Defendants BGI Genomics Co. Ltd., BGI Americas Corp., MGI Tech Co., Ltd., MGI Americas, Inc., and Complete Genomics, Inc. (collectively, "BGI") move to stay or modify in part the preliminary injunction issued in this case pending their appeal to the Federal Circuit. Dkt. No. 202. I find that the balance of harms and the public interest weighs in favor of BGI and outweighs the likelihood of success on appeal of plaintiffs Illumina, Inc. and Illumina Cambridge Ltd. (collectively, "Illumina"). Accordingly, BGI's motion is GRANTED as conditioned below.

## BACKGROUND

Illumina filed the complaint in Case No. 19-cv-3770 ("*Illumina I*") on June 27, 2019. *Illumina I*, Dkt. No. 1.[1] It filed a motion for preliminary injunction in that case on February 19, 2020. Dkt. No. 84-4. It then filed a complaint in Case No. 20-cv-1465 ("*Illumina II*") and a motion for preliminary injunction on February 27, 2020. *Illumina II*, Dkt. Nos. 1, 11. After briefing and argument, I issued an order granting both of Illumina's motions on June 15, 2020. Dkt. No. 185 ("Order"). Illumina then submitted a proposed preliminary injunction, to which BGI objected. Dkt. Nos. 187, 188, 189. I issued Illumina's requested injunction. Dkt. No. 194. BGI filed a Notice of Appeal to the Federal Circuit on July 15, 2020. Dkt. No. 199.

---

[1] All ECF docket references are to *Illumina I*, unless otherwise indicated.

On July 20, 2020, BGI moved to stay or modify the preliminary injunction pending appeal. Dkt. No. 202 ("Mot."). Illumina filed an Opposition on July 31, 2020. Dkt. No. 213 ("Oppo."). BGI filed a Reply on August 5, 2020. Dkt. No. 218. Illumina objects to BGI's reply brief to the extent that it requests an order without a hearing. Dkt. No. 221. It asserts that a hearing is necessary because "BGI's Reply includes a host of positions that deserve response (and often correction)." *Id.* Notwithstanding Illumina's objection, I find that this motion is suitable for decision without oral argument pursuant to Civil Local Rule 7-1(b) and VACATE the hearing set for August 13, 2020.

Although BGI originally challenged the injunction's scope because it included 24 library "prep" kits, the parties agreed to exclude these products from the scope of the injunction. *See* Mot. 1; Dkt. No. 211. Accordingly, BGI's challenge with respect to these products is moot. Oppo. 5.

## LEGAL STANDARD

Federal Rule of Civil Procedure 62 gives a district court the ability to stay an injunction pending appeal. Fed. R. Civ. P. 62. In evaluating whether to issue a stay, courts consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).

## DISCUSSION

### I. PARTIES' ARGUMENTS

At issue is whether the injunction should continue to enjoin BGI's "entirely non-commercial, internal development activities." Mot. 1. BGI contends that its CoolMPS technology continues to require significant development work, including testing, optimizing, and validating sequencing chemistries and developing new applications for these technologies. *Id.* at 6. BGI asserts that its internal work "would not be published or used in marketing and sales materials and would be reserved strictly for internal technology development." *Id.* It also asserts that no new sequencing instruments will be imported and installed in its San Jose facility. *Id.* at 10. BGI

2

provides a declaration of Rade Drmanac, the Chief Scientific Officer of Complete Genomics, Inc. ("CGI"). Dkt. No. 202-1. Dr. Drmanac states that the proposed development work on CoolMPS would not be published or used in marketing and sales materials, and that CGI is "prepared to adopt protocols and processes to ensure that internal development of CoolMPS using azidomethyl that was found likely to infringe never gets publicized, disseminated, or otherwise used externally so long as the Court's injunction remains in place." *Id.* ¶¶ 8, 12. Further, he stated that lost development time would significantly harm the continued viability of CoolMPS and result in employee lay-offs. *Id.* ¶¶ 9-11. BGI also seeks to use sequencing reagents that do not practice or embody the claims of the asserted patents. Reply 12.

BGI has not appealed the Order's infringement and invalidity determinations, but only the scope of the preliminary injunction. *Id.* at 4. It argues that there is a fair possibility of reversal considering Illumina's lack of showing of irreparable harm from BGI's internal development activities. Mot. 7. Relatedly, it asserts that Illumina cannot establish irreparable harm with respect to these activities. *Id.* at 8-9. If Illumina's patents are held to be valid and infringed, BGI will not be able to capitalize on its internal development work. *Id.* at 10. According to BGI, Illumina's alleged harm is also undercut by the fact that Illumina did not move for an injunction against BGI until it announced plans to commercialize its CoolMPS product, even though Illumina had alleged that development activities were being conducted. *Id.* at 10. On the other hand, should BGI prevail, it will be irreparably harmed if it is unable to develop its products for the period of time this case is pending. *Id.* at 9-10. For similar reasons, BGI argues that the public will be harmed absent a stay because it will be deprived of valuable medical diagnostic technology that competes with Illumina, a monopolist. *Id.* at 11.

Illumina responds that BGI's delay in bringing this motion defeats its claim of irreparable harm. Oppo. 1. It argues that when BGI responded to the preliminary injunction motions, and when it subsequently objected to Illumina's proposed preliminary injunction, BGI did not contend that these development activities should be excluded. *Id.* at 3-4. Illumina also states that BGI produced very few documents in response to its discovery requests regarding irreparable harm, and no documents regarding a non-infringing re-design. *Id.* at 5. In addition, it asserts that BGI's

3

showing of irreparable harm is vague and weak, especially considering that BGI can develop its technology outside of the United States. *Id.* at 7-8, 10. Illumina also claims that it promptly brought an infringement suit against BGI after learning about CoolMPS. *Id.* at 9.

Illumina asserts that it will be harmed if BGI's motion is granted and disputes BGI's contention that the internal development activities will be entirely non-commercial. *Id.* at 10. It points to a "test send out service" in which BGI contracts with companies and institutions to analyze samples remotely in China. *Id.* at 10. This activity is not enjoined, but Illumina contends that BGI's development activity would make this service more competitive. *Id.* at 10-11. Illumina asserts that BGI's development activities would cause worldwide harm to Illumina and allow BGI to compete more effectively overseas. *Id.* 11-14. Finally, Illumina states that BGI's request to try to develop a "re-design" that does not infringe effectively seeks an advisory opinion. *Id.* at 14-16.

## II.  DISCUSSION

As an initial matter, I am not persuaded by Illumina's argument that BGI's irreparable harm argument is undermined by its delay in seeking to stay the preliminary injunction, or by BGI's argument that Illumina's irreparable harm is undermined by its delay in seeking to enjoin BGI's development activities. *See* Oppo. 6; Reply 1-2, 6. It is not clear that Illumina knew of BGI's activities related to CoolMPS for a substantial period prior to moving for an injunction. For BGI's part, it moved to modify or stay the injunction within one month of the court's entry of the preliminary injunction.

With respect to its first *Hilton* factor, a stay is appropriate where the movant establishes either a strong likelihood of success on appeal, or "failing that, [if] it can nonetheless demonstrate a substantial case on the merits." *Standard Havens Prod., Inc. v. Gencor Indus., Inc.*, 897 F.2d 511, 513 (Fed. Cir. 1990) (citing *Hilton*, 481 U.S. at 776). Although I found that Illumina had demonstrated a likelihood of success on the merits in my Order, BGI apparently has not appealed this finding, but instead challenges the scope of the injunction. I am not persuaded that BGI's decision not to appeal infringement and validity determinations demonstrates "rank and wrongful willful infringement." Oppo. 7. Given the narrow scope of the appeal and the parties' cursory

attention to the preliminary injunction's scope in the briefing, I disagree with Illumina's argument that it established a strong likelihood of success on appeal of the scope issues. However, I find that the first *Hilton* factor weighs slightly in favor of Illumina.

But on balance, the remaining *Hilton* factors weigh in favor of granting BGI's motion. BGI's proffered protocols, if made more specific and enforceable, would address much of the potential harm that Illumina would suffer, including preventing any harm occurring overseas that flows from BGI's development activities and prohibiting any commercial activity in the United States. Dr. Drmanac states CGI is "prepared to adopt protocols and processes to ensure that internal development of CoolMPS using azidomethyl that was found likely to infringe never gets publicized, disseminated, or otherwise used." Dkt. No. 202-1 ¶¶ 8, 12. In addition, in Reply BGI asserted that it "reiterates to the Court that these controls would include measures preventing the use of any of this internal development work to improve products sold outside the United States," including "preventing use of this internal development work on the currently-existing CoolMPS chemistry to improve the 'test send out' service." Reply 9. If these protocols are put in place and include sufficient restrictions on BGI's marketing activities (such as limitations on communications with key opinion leaders), they would eliminate Illumina's alleged harm. If Illumina prevails in this litigation, BGI would not be able to capitalize on these non-commercial development activities.

Further, I am not persuaded by Illumina's argument that BGI should not be permitted to develop "design-arounds," or that it waived its argument that the accused sequencers may not infringe. Oppo. 14. The current dispute relates to what activities actually constitute infringing activity and was not addressed in detail in prior briefing. As discussed, to the extent BGI is able to develop non-infringing technology in an internal, purely non-commercial context, Illumina will not be harmed.

Denying BGI's motion would prevent it from developing products that, if it prevails in this litigation, are not infringing. At this juncture, BGI need not produce extensive evidence of harm that it asserts has largely not yet materialized. *See* Reply 5-6. It is enough that BGI will not be able to further develop CoolMPS, or a possible non-infringing alternative, while its appeal is

pending. *See* Dkt. No. 202-1 ¶¶ 8-10. This would undoubtedly harm BGI. It would also harm the public, as BGI is a key competitor of Illumina and its non-infringing products would benefit the public in the form of increased competition.[2]

That said, at the moment BGI's proposed protocols as described in its briefs and in the Drmanac Declaration lack specificity and enforceability. Accordingly, BGI shall produce to Illumina and file on the docket within 14 days of this Order the protocol(s) or control(s) that it plans to use to ensure that its development activities are non-commercial, as discussed above. If Illumina objects in good faith that the protocols are inconsistent with the spirit of this Order, and the parties are unable to reach a resolution after meeting and conferring within seven days thereafter, they may file a joint submission to the court within 14 days of BGI's initial filing of the protocols. The preliminary injunction shall remain in place as it relates to the development activities until either the parties have stipulated to the protocols or I have approved them.

## CONCLUSION

For the above reasons, BGI's motion is GRANTED as conditioned below. IT IS HEREBY ORDERED that this Court's preliminary injunctions, Case No. 19-cv-3770, Dkt. No. 194 and Case No. 20-cv-1465, Dkt. No. 112, are partially stayed pending appeal to the Federal Circuit so that they do not enjoin (1) the 24 products that contain no azidomethyl blocked nucleotides as described in Dkt. No. 212 and (2) BGI's use of the Accused Sequencers with noninfringing sequencing reagents. As soon as I approve the protocols as described in this Order, I will also stay the provision in the preliminary injunctions that (3) BGI's internal development activities relating to its CoolMPS technologies that stop short of any commercialization are enjoined.

**IT IS SO ORDERED.**

Dated: August 11, 2020

William H. Orrick
United States District Judge

---

[2] I am not persuaded by Illumina's arguments that BGI's activities would unfairly give BGI a "head start" once its patents begin expiring in the coming years. Oppo. 12. Illumina provides no detail as to which of the many asserted patents will expire, when, or whether CoolMPS implicates these patents.