UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ILLUMINA, INC., et al.,<br><br>                Plaintiffs,<br><br>    v.<br><br>BGI GENOMICS CO., LTD, et al.,<br><br>                Defendants. | Case No. 19-cv-03770-WHO (TSH)<br><br>Case No. 20-cv-1465-WHO<br><br>**DISCOVERY ORDER**<br><br>Re: Dkt. No. 222 (19-3770) & 144 (20-1465) |

      Defendants move to compel Plaintiffs to produce for deposition the nine listed inventors for the patents at issue in this case. Plaintiffs oppose. There are two separate sets of issues: (1) whether this discovery is relevant and proportional under normal Rule 26 considerations, and (2) what Plaintiffs' obligations are under the assignment agreements with respect to the witnesses. The Court considers each in turn.

**A.    Relevant and proportional**

      In these patent infringement actions in which Defendants plead invalidity defenses, depositions of the inventors are relevant. Defendants assert defenses under section 112, arguing that the asserted patents lack a written description sufficient to enable one of skill in the art to make and use the claimed inventions. Defendants argue that the inventors did not possess the claimed inventions at the time the priority applications were filed. They argue that evidence to support those defenses is likely in the possession of one or more of the named inventors. Certainly, inventor testimony could be relevant to such arguments. *See, e.g., Nuvo Pharm. (Ir.) Designated Activity Co. v. Dr. Reddy's Labs. Inc.*, 923 F.3d 1368, 1381 (Fed. Cir. 2019) (holding that "inventor testimony . . . illuminates the absence of critical description in this case").

      The Court understands that Judge Orrick has preliminarily rejected the enablement

affirmative defense in granting Plaintiffs' motion for a preliminary injunction. 19-3770, ECF No. 185 at 9-13, 14-17. Therefore, it will probably fail on summary judgment or at trial. However, probably does not mean certainly. A litigant who is on the losing end of a preliminary injunction is still entitled to take discovery in an attempt to turn the case around. Here, Defendants say they have added new counsel to the case after briefing on the preliminary injunction motion was completed, and they are exploring new theories for some of their affirmative defenses, including enablement. They are entitled to take discovery to explore those issues. Moreover, the inventors are natural and logical deponents with respect to these defenses.

Plaintiffs argue from the premise that there is a high bar Defendants need to clear to take these depositions. Plaintiffs say that "BGI has failed to identify a substantial question as to the validity of Illumina's patents." Plaintiffs say that Defendants "appear[] to suggest that the general topic [of the depositions] might be either a written description or enablement defense, although even that is vague." And Plaintiffs argue that it should be sufficient for Defendants to depose the two inventors whom Plaintiffs have selected to make available for deposition.

The Court disagrees that the bar is that high. Defendants are not proposing to depose a long list of random people, or people who have only a tenuous connection to the case. Defendants are asserting written description and enablement defenses, and the inventors are logical witnesses with respect to these defenses. Defendants do not have to prove the merit of their affirmative defenses before they are entitled to take discovery on them; they just need to adequately plead them to make this discovery relevant. They also don't need to turn over their deposition outline to Plaintiffs ahead of time. They've made clear they want to depose the inventors about invalidity defenses, and they have previewed what the defenses are. They don't need to disclose more than that to be entitled to these depositions. And the suggestion that Defendants should be limited to deposing the inventors chosen by their opponents does not even merit discussion.

Plaintiffs' arguments that the inventors are too unimportant, were involved too long ago, and are simply not worth deposing are also hard to credit in light of the assignment agreements by which Plaintiffs acquired these patents from the inventors. *See* ECF No. 222-1. In each assignment, the inventors agreed to "testify in any legal proceeding . . . and generally do

2

everything possible to aid" Plaintiffs "to obtain and enforce proper Patent Protection for said improvements in the United States." There is no date limit on that obligation, other than the presumed lack of need for their testimony once the patents expire.

The assignments themselves show Plaintiffs' belief, at least at the time the assignments were entered into, that the inventors' testimony, even years down the road, could be important. Plaintiffs did not want just the legal rights to these patents, but also the meaningful ability to enforce those rights and to defend against claims of invalidity. Had Plaintiffs acquired only the patents without the right to require the inventors to testify, they would have known that there was a potential evidentiary hole in their ability to enforce because sometimes inventor testimony is important. And despite Plaintiffs' argument today that the patents were invented so long ago that the inventors likely remember nothing, Plaintiffs were careful to make sure there was no time limit on the requirement to testify.

As to proportionality, the Court thinks that viewing the inventor depositions in isolation is myopic. In their recent case management conference statement, *see* 20-1465 ECF No. 145, both sides have proposed aggregate deposition limits in the two related cases. Aggregate limits are a far better way to ensure proportional discovery than the Court deciding how many witnesses are proportional for each issue in the case. The parties know their case better than the Court does, and if deposing every inventor would be a waste of time, the Court expects Defendants would use their aggregate time more productively elsewhere. The Court observes, however, that *both* sides' proposed deposition limits seem to assume that all nine inventors will be deposed. *See id*. at 9 ("Plaintiffs' Position: There are only three additional Illumina inventors at issue in this case beyond the six Illumina inventors already at issue in C.A. No. 3:19-cv-03770-WHO. Given the significant overlap in subject matter between the two cases, Plaintiffs propose twenty (20) hours of additional deposition time, and five (5) additional depositions, resulting in a total of 135 hours of deposition time and twenty-five (25) depositions per side between both the instant case and the related -03770 case."); *id*. at 10 ("Defendants' Position: Given that there are seven inventors on the 973 and 444 patents and two additional inventors on the 025 patent, Defendants propose that each side shall be limited to sixty (60) hours of additional deposition time, resulting in a total of

1    175 hours of deposition time per side between both the instant case and the related -03770 case.").

**B.     Assignment agreements**

As noted above, in each of the assignment agreements in which the inventors conveyed their interest in the patents, the inventors "covenant and agree that we will communicate to the said [assignee], its successors, legal representatives and assigns, any fact known to us respecting said [patents], and testify in any legal proceeding, sign all lawful papers, execute all divisions, continuing and reissue application, make all rightful oaths and generally do everything possible to aid the said [assignee], its successors, legal representatives and assigns, to obtain and enforce proper Patent Protection for said [patents] in the United States."  Of the nine inventors, Plaintiffs say that seven are in the United Kingdom, one is in the Netherlands, and Plaintiffs do not know where the last one is.  The parties disagree about what these agreements to testify obligate Plaintiffs to do.  Defendants urge the Court to order Plaintiffs to make the inventors available for deposition.  Plaintiffs say that the inventors are not their employees, officers, directors or managing agents, so they cannot be compelled to produce them under Federal Rule of Civil Procedure 30.  Instead, Plaintiffs contend that the proper procedure is to seek foreign depositions through the Hague Convention.

The Court agrees with Defendants.  In *Amgen, Inc. v. Ariad Pharmaceuticals, Inc.*, 2007 WL 1425854 (D.Del. May 14, 2007), the Court confronted a similar request by a plaintiff in a patent infringement lawsuit to force the defendant to bring foreign-based inventors to the U.S. for a deposition.  The defendant argued that absent Rule 30, the plaintiff's only options were a subpoena under Rule 45 (which wouldn't work because the inventors were outside the U.S.) or the Hague Convention.  The court disagreed, explaining that "the analysis of whether the court should require the inventors' appearance does not end at that point." *Id*. at *2.  The court then explained that "[e]ach inventor executed an assignment." *Id*.  The court concluded that in each of the assignments, "the 'giving of testimony' is specifically required 'in any . . . other proceeding in which said invention . . . or patent . . . may be involved.'" *Id*.  Citing precedents enforcing such agreements to testify, the court ordered the defendant to "produce the foreign-based inventors . . . in the United States for deposition at a time and place agreed to by the parties."  Regarding an

4

1    inventor whose location was unknown, the court ordered the defendant to "advise the court . . . of
2    defendant['s] efforts to locate him and to explain what is meant that '[defendant] has not been able
3    to contact' him." *Id*. at *3.
4        Other courts have likewise enforced agreements to testify.  "Courts interpreting assignment
5    agreements containing similar language have required the foreign inventor to sit for a deposition in
6    connection with litigation over the patent." *Industrial Tech. Research Institute v. LG Corp.*, 2012
7    WL 12883204, *1 (S.D. Cal. Dec. 4, 2012); *see also Aerocrine AB v. Apieron Inc*., 267 F.R.D.
8    105, 111-12 (D.Del. 2010) ("Apieron's motion to compel Drs. Persson and Stromberg to travel to
9    the United States to be deposed is **GRANTED.**  Drs. Persson and Stromberg are parties to an
10   assignment agreement that specifically contemplated the provision of testimony for purposes of
11   enforcing the patent rights that were the subject of the assignment agreement; it also specifically
12   references enforcement in the United States.") (emphasis original); *Mineba Co., Ltd., v. Papst*, 370
13   F. Supp. 2d 302, 308 (D.D.C. 2005) ("With respect to the inventors . . . the Court is persuaded that
14   Papst has the ability to compel them to appear for testimony at trial and should have had the
15   ability to make them available in the United States for deposition testimony.  The inventors had all
16   executed written assignment agreements with Papst Motoren which contained express agreements
17   to provide testimony at the request of Papst Motoren and its successors and assigns.").
18       When a litigant has the contractual right to require a foreign inventor to testify in a U.S.
19   legal proceeding, courts bring skepticism to any argument that the litigant is unable to produce the
20   witness.  For example, in *Mineba*, "Papst . . . delivered letters to all of the witnesses requesting
21   their voluntary appearance for deposition.  All of the witnesses declined." 370 F. Supp. 2d at 303.
22   The court explained that "[b]ecause the inventors are expressly required to testify at the request of
23   Papst by written contracts, the Court cannot but conclude that Papst's 'request' for the voluntary
24   appearance of the inventor witnesses was made with a wink and a nod and that their failure to
25   appear must be attributed to Papst." *Id*. at 310.  The court concluded that "Papst has willfully
26   failed to produce these witnesses.  If it continues to fail to produce them for testimony at trial, the
27   Court will instruct the jury what adverse inferences may be drawn from Papst's failure to produce
28   the witnesses." *Id*.

Similarly, in *Industrial Tech. Research Institute*, ITRI claimed to be trying to get the inventor to testify by "requesting" that he appear for a deposition. 2012 WL 12883204 at *3. "Notably," the court observed, "the email makes no mention of [the inventor's] *contractual obligation* to testify regarding the [] patent." *Id*. (emphasis original). The court also expressed skepticism that the ITRI employees who contacted the inventor had sufficient title and influence to persuade him. *Id*. Ultimately, as in *Mineba*, the court ordered ITRI to make the witness available for a deposition in the U.S. and then threatened ITRI with sanctions if it did not produce him. *Id*. at *3 ("There is no dispute Sheen's testimony is relevant to the case, and the failure to secure his testimony pursuant to the assignment agreement would not present an ideal circumstance for either side. For ITRI, it could possibly result in consequences under Fed.R. Civ. P. 37, including evidence preclusion sanctions at trial."); *see also Amgen*, 2007 WL 1425854, at *3 (noting that in *In re Nifedipine Capsule Patent Litig.*, 1989 WL 111112 (S.D.N.Y. Sept. 20, 1989), "[t]he court required plaintiff to produce the inventors for deposition in the United States, pursuant to the Federal Rules of Civil Procedure, or be subject to sanctions.").

The cases Plaintiffs cite are inapposite. The court in *Koninklijke Philips N.V. v. Wangs Alliance Corp.*, 2018 WL 283893 (D.Mass. Jan. 2, 2018), did not hold that the proper procedure is to seek foreign depositions through the Hague Convention. Rather, the court assumed for the sake of argument that the foreign inventor could be made to appear because of his contractual agreement to testify, *see id*. at *2 ("Even crediting WAC's argument that Flaissier is contractually obligated to appear . . ."), but held the effort was not worth the candle because his testimony was unlikely to be relevant.

In *Medpointe Healthcare, Inc. v. Apotex, Inc.*, 2007 WL 211202 (D.Del. Jan. 26, 2007), the assignment required the inventor to testify in any legal proceedings and do everything necessary or desirable to aid the assignee to obtain and enforce proper protection everywhere in the world. *Id*. at *1 (". . . in the United States, their territories and possessions, and all foreign countries."). The court "decline[d] to find . . . that this language inherently includes a specific assent to be subjected to an American-style deposition, governed by American discovery laws, over and above customary (and more restrictive) German discovery practices which would have been most

6

familiar to Mr. Hettche at the time of signing." *Id*. at *2. The court therefore held that proceeding under the Hague Convention was appropriate. *Id*. Similarly, in *Murata Mfg. Co., Ltd. v. Bel Fuse, Inc*., 242 F.R.D. 470 (N.D. Ill. 2007), the assignment required the inventor to testify in any proceeding in connection with the patent "in any country." *Id*. at 478. The Court was skeptical that this obligated the inventor to "travel the world in his retirement," *id*. at 480, and concluded that "there is nothing to suggest he envisioned and agreed to being deposed around the globe." *Id*. The court accordingly followed *Medpointe* and declined to order the inventor to sit for a deposition in the U.S. *Id*.

To see why *Medpointe* and *Murata* are off point, let's take another look at the agreement to testify in this case: The inventors "covenant and agree that we will communicate to the said [assignee], its successors, legal representatives and assigns, any fact known to us respecting said [patents], **and testify in any legal proceeding**, sign all lawful papers, execute all divisions, continuing and reissue application, make all rightful oaths and generally do everything possible to aid the said [assignee], its successors, legal representatives and assigns, to obtain and enforce proper Patent Protection for said [patents] **in the United States**." (emphasis added).

They were agreeing to testify in legal proceedings in one country and only one: the U.S. The inventors could not reasonably have thought that the "familiar . . . practices in [their] home country," *Murata*, 242 F.R.D. at 480, or the "customary (and more restrictive) . . . discovery practices which would have been most familiar to [them] at the time of signing," *Medpointe*, 2007 WL 211202, at *2, would apply to their testimony because they were specifically agreeing to testify in U.S. legal proceedings and *only* in U.S. legal proceedings. *Medpointe* and *Murata* therefore do not support Plaintiffs.

The Court concludes that Plaintiffs must make the inventors available for deposition in this case. But the Court must also be a bit more specific about what that means. Judge Orrick will have to decide what the obligation to "testify in any legal proceeding . . . in the United States" means for trial. In normal times, the Court might very well conclude that language obligates a witness to travel to the U.S. for a deposition. However, during the current pandemic, nearly all depositions in U.S. legal proceedings are being done by videoconference. If the inventors get

1    deposed from the comfort and convenience of their living room in the U.K. or the Netherlands,
2    they will be testifying in this U.S. legal proceeding the same way that any U.S.-based witness
3    would.  There is no need for them to travel to the U.S.  Unlike in mainland China, for example,
4    there is no legal prohibition on the inventors being deposed in the U.K. or the Netherlands for a
5    U.S. legal proceeding.
6        Accordingly, in line with the case law, the Court orders Plaintiffs to make the inventors
7    available for deposition by videoconference or face sanctions.  For the inventor Plaintiffs have
8    been unable to locate, the Court orders Plaintiffs to advise the Court within 10 days of their efforts
9    to locate him.  *See Amgen*, 2007 WL 1425854, at *3.
10       The Court has some concerns that Plaintiffs may have been priming the inventors to refuse
11   to attend a deposition.  At the August 13, 2020 hearing, Plaintiffs repeatedly described the
12   inventor depositions as optional and said that no one had volunteered:  "So we haven't had anyone
13   volunteer to participate.  It's not like we haven't inquired.  Tr. at 9:19-20; *see also* Tr. at 14:7 ("we
14   told him our desire"); Tr. at 15:16-17 ("In this case I don't think there's any reason to believe, for
15   example, people with competitors are just going to, like, appear, you know, voluntarily.").  If that
16   is how Plaintiffs have been describing the depositions to the inventors – as voluntary – that is the
17   specific strategy that was condemned in *Mineba*.  370 F. Supp. 2d at 310 ("Papst's 'request' for
18   the voluntary appearance of the inventor witnesses was made with a wink and a nod and . . . their
19   failure to appear must be attributed to Papst.").
20       Plaintiffs also repeatedly argued at the hearing that there would be some sort of legal
21   problem with conducting an American-style deposition in the U.K., Tr. at 8:10-11, 8:14-21, 21:17-
22   20, which is not true.  If this is the position Plaintiffs are taking in court, it seems inconceivable
23   they told the inventors they are required to be available for deposition or that this message was
24   strongly conveyed by executives the witnesses would listen to.  *See Industrial Tech. Research*
25   *Institute*, 2012 WL 12883204 at *3.
26       Plaintiffs also constantly described the requested relief as physically traveling to the U.S.,
27   the country most ravaged by the novel coronavirus, during the height of the pandemic here.  Tr. at
28   9:23-25 ("If someone said 'Yes, I will come to the United States,' which is the requested relief –

1  "); *id*. at 14:12-15 ("You know, they haven't said, really, no, but they haven't agreed to comply
2  with U.S.-style discovery. And they certainly haven't agreed to come to the U.S."); *id*. at 26:17-
3  23 ("And then of the two others, like I say, I think we've – they've been responsive and we've had
4  discussions with them. Their request has been, you know, come to the United States and other
5  things. So we haven't really gotten to the Zoom question, and I think that, with respect to those
6  witnesses, that that could be well received . . ."). It is true that Defendants are partly to blame for
7  this because they did ask for the inventors to travel to the U.S. for deposition. During the August
8  13 hearing, Defendants disclaimed that request and agreed that videoconference was appropriate,
9  but they did argue for travel to the U.S. in the discovery letter brief. Nonetheless, Plaintiffs knew
10 perfectly well that depositions in the U.S. are being done by videoconference during the pandemic.
11 If they had actually been trying to get the inventors to appear for deposition, they would of course
12 have told them it could be done by videoconference, like essentially all depositions now being
13 conducted in the U.S.
14      Plaintiffs also presented argument as if the only options they understood were possible
15 were a deposition in a foreign country under the Hague Convention or traveling to the U.S. for a
16 deposition, again underscoring that they never mentioned to the inventors that videoconference
17 from home was the likely form of the deposition. Tr. at 15:24-16:7 ("The Court: . . . When
18 plaintiffs contacted the inventors, did you describe BGI's request as coming to the United States
19 for a deposition? [¶] Mr. McClellan: I think we – I don't know that we got that specific. We just
20 said that they need to – to do a deposition. And we didn't get into whether it would be done by
21 Hague or U.S., so we haven't gotten to that level of detail."); *id*. at 17:1-6 ("The Court: Okay.
22 But you didn't necessarily call – even if you assumed Zoom, you didn't necessarily tell them that.
23 Mr. Reines: I don't think we got into the particulars at all, whether it would be Hague style or
24 nonHague style. We didn't do any of that.").
25      In summary, it may be that Plaintiffs' efforts to compel the inventors to make themselves
26 available for deposition have consisted of meekly asking them to volunteer to travel great
27 distances and imperil their lives. If Plaintiffs cannot make any of the inventors available for a
28 deposition by videoconference, they may face sanctions. Of course, if Plaintiffs can show a

justifiable reason why they could not make one or more of the inventors available, sanctions may not be warranted. At the hearing, Plaintiffs stated that one of the inventors has cancer, but it is unclear if he cannot testify or how dated this information is. Tr. at 14:8-9 ("we didn't really push it at that point in time."); *id*. at 23:16-25. They also stated that they cannot find one of the inventors, and that others have been nonresponsive. If Plaintiffs can show that despite all diligent efforts to enforce their contractual right to have the inventors testify in this legal proceeding, events beyond their control made that impossible, the Court might not award sanctions. However, the evidence relevant to the diligence inquiry does not include only the steps Plaintiffs take starting tomorrow. It also includes communications to date, including any that may have suggested that a deposition was voluntary, inconvenient, or dangerous.

**IT IS SO ORDERED.**

Dated: August 24, 2020

THOMAS S. HIXSON
United States Magistrate Judge

10