1

2

3

4

5

6

7

8

9

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| | |
|---|---|
| ILLUMINA, INC.,<br>ILLUMINA CAMBRIDGE LTD.,<br><br><div align="right">*Plaintiffs,*</div><br>vs.<br><br>BGI GENOMICS CO., LTD.,<br>BGI AMERICAS CORP.,<br>MGI TECH CO., LTD.,<br>MGI AMERICAS, INC. and<br>COMPLETE GENOMICS, INC.,<br><br><div align="right">*Defendants.*</div> | Case No. 3:19-cv-03770-WHO<br>Case No. 3:20-cv-01465-WHO<br><br><br>**PRELIMINARY JURY INSTRUCTIONS**<br><br><br>Judge William H. Orrick |
| COMPLETE GENOMICS INC.,<br><br><div align="right">*Counterclaim-Plaintiff,*</div><br>vs.<br><br>ILLUMINA, INC., and<br>ILLUMINA CAMBRIDGE LTD.,<br><br><div align="right">*Counterclaim-Defendants.*</div> | |

# I.    PRELIMINARY JURY INSTRUCTIONS

## A.    Duty of Jury

Members of the jury:  You are now the jury in this case.  It is my duty to instruct you on the law.

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath to do so.

At the end of the trial I will give you final instructions.  It is the final instructions that will govern your duties.

Please do not read into these instructions, or anything I may say or do, that I have an opinion regarding the evidence or what your verdict should be.

**B.      Nature of the Action and the Parties**

This is a patent case.  The patents involved in this case relate to DNA sequencing.  During the trial, the parties will offer testimony to familiarize you with this technology.

Illumina is the owner of five patents, which are identified by the Patent Office number: U.S. Patent No. 7,566,537 (which may be called "the '537 patent"), 9,410,200 (which may be called "the '200 patent"), 10,480,025 (which may be called "the '025 patent"), 7,541,444 (which may be called "the '444 patent), and 7,771,973 (which may be called "the '973 patent").  These patents may also be referred to as the "Asserted Patents."  Illumina is the plaintiff.  The five defendants are part of the BGI Group.  You will hear them identified collectively as "BGI", "CGI", or "Defendants".  In these instructions, they will be referred to as "Defendants".

### C.      What a Patent Is and How One Is Obtained

This case involves a dispute relating to a United States patent.  Before summarizing the positions of the parties and the legal issues involved in the dispute, let me take a moment to explain what a patent is and how one is obtained.

Patents are granted by the United States Patent and Trademark Office (sometimes called "the PTO").  A valid United States patent gives the patent holder the right to prevent others from making, using, offering to sell, or selling the patented invention within the United States, or from importing it into the United States, during the term of the patent without the patent holder's permission.  A violation of the patent holder's rights is called infringement.  The patent holder may try to enforce a patent against persons believed to be infringers by means of a lawsuit filed in federal court.

To obtain a patent one must file an application with the PTO.  The process of obtaining a patent is called patent prosecution.  The PTO is an agency of the federal government and employs trained patent examiners who review applications for patents.  The application includes what is called a "specification," which must contain a written description of the claimed invention telling what the invention is, how it works, how to make it, and how to use it so others skilled in the field will know how to make or use it.  The specification concludes with one or more numbered sentences.  These are the patent "claims."  When the patent is eventually granted by the PTO, the claims define the boundaries of its protection and give notice to the public of those boundaries.

After the applicant files the application, a PTO patent examiner reviews the patent application to determine whether the claims are patentable and whether the specification adequately describes the invention claimed.  In examining a patent application, the patent examiner reviews information about the state of the technology at the time the application was filed.  As part of that effort, the patent examiner searches for and reviews information that is publicly available, submitted by the applicant, or both.  That information is called "prior art."  Prior art is defined by law, and I will give you at a later time specific instructions as to what constitutes prior art.  However, in general, prior art includes things that existed before the claimed invention, that were publicly known, or used in a publicly accessible way in this country, or that were patented or described in a publication in any country.  The patent examiner considers, among other things, whether each claim defines an

3

invention that is new, useful, and not obvious in view of the prior art.  A patent lists the prior art that the examiner considered; this list is called the "cited references."

After the prior art search and examination of the application, the patent examiner then informs the applicant in writing what the examiner has found and whether any claim is patentable, and thus will be "allowed."  This writing from the patent examiner is called an "office action."  If the examiner rejects the claims, the applicant has an opportunity to respond and sometimes changes the claims or submits new claims.  This process, which takes place only between the examiner and the patent applicant, may go back and forth for some time until the examiner is satisfied that the application and claims meet the requirements for a patent.  Sometimes, patents are issued after appeals with the PTO or to a court.  The papers generated during this time of communicating back and forth between the patent examiner and the applicant make up what is called the "prosecution history."  All of this material becomes available to the public no later than the date when the patent issues.

The fact that the PTO grants a patent does not necessarily mean that any invention claimed in the patent, in fact, deserves the protection of a patent.  For example, the PTO may not have had available to it all the information that will be presented to you.  A person accused of infringement has the right to argue here in federal court that a claimed invention in the patent is invalid because it does not meet the requirements for a patent.

As I just mentioned, this case is about patents.  Before summarizing the positions of the parties and the legal issues involved in patent disputes, I am going to show a video for you called The Patent Process:  An Overview for Jurors that has been prepared by the Federal Judicial Center for the purpose of providing jurors like you some background on the patent system.

[Play video: Federal Judicial Center, The Patent Process: An Overview for Jurors, narrated by United States District Judge Jeremy Fogel.]

**PRELIMINARY JURY INSTRUCTIONS**                    Case No. 3:19-cv-03770-WHO
                                                     Case No. 3:20-cv-01465-WHO

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### D.      Patent Litigation

Someone is said to be infringing a claim of a patent when they, without permission from the patent owner, import, make, use, offer to sell, or sell the claimed invention, as defined by the claims, within the United States before the term of the patent expires.  A patent owner who believes someone is infringing the exclusive rights of a patent may bring a lawsuit, like this one, to attempt to stop the alleged infringing acts and to recover damages, which generally means money paid by the infringer to the patent owner to compensate for the harm caused by the infringement.  The patent owner must prove the amount of damages the patent owner is entitled to receive from the infringer as compensation for the infringing acts.

A party accused of infringing a patent may deny infringement and/or prove that the asserted claims of the patent are invalid.  In this case, there is no dispute that Defendants directly infringe the Asserted Claims of each of the Asserted Patents, given the way that I have interpreted the meaning of the claims.  As a result, Defendants do not dispute that the accused Standard MPS products infringe the asserted claims of all the asserted patents and that the accused CoolMPS products infringe claim 13 of the '973 Patent and claim 3 of the '444 patent.

A patent is presumed to be valid.  In other words, it is presumed to have been properly granted by the PTO.  But that presumption of validity can be overcome if clear and convincing evidence is presented in court that proves the patent is invalid.

I will now briefly explain the parties' basic contentions in more detail.

### E.      Contentions of the Parties

In this trial, you will be asked to decide if Defendants have indirectly infringed the Asserted Claims by inducing or contributing to the infringement by others.  These "Asserted Claims" include claims 1-6, and 8 of the '537 Patent, claims 1, 2, 4, 5, 7-12, 14, 15, and 17-19 of the '200 Patent, claims 1-5, 7-21, 27-29, 31, 33-36, 38, 39, 41-44, 46, 47, 49-52, and 54 of the '025 Patent, claim 13 of the '973 Patent, and claim 3 of the '444 Patent.  Illumina is seeking damages for Defendants' past infringements and also contends that Defendants' infringement was willful.  Illumina must prove that Defendants willfully infringed the asserted claims by a preponderance of the evidence. That means that Illumina must show that it is more likely than not that Defendants willfully infringed the asserted patents.

Defendants contend that the Asserted Claims are invalid.  Specifically, Defendants contend that the Asserted Claims are invalid because they would have been obvious at the time they were invented, or alternatively, because one of skill in the art reading the patents would not have understood the inventors to be in possession of the full scope of the inventions and would not have known how to practice the inventions without undue experimentation.

Invalidity of the asserted patent claim is a defense to infringement.  Therefore, even though the Patent Examiner has allowed the claims of the Asserted Patents, you, the jury, must decide whether each claim of the Asserted Patents that is challenged by Defendants is invalid.  Defendants must prove invalidity of each challenged claim by clear and convincing evidence in order to overcome the presumption of validity.

**PRELIMINARY JURY INSTRUCTIONS**                                         Case No. 3:19-cv-03770-WHO
                                                                         Case No. 3:20-cv-01465-WHO

### F.        Burden of Proof

In this case, the facts must be proven by a required amount of evidence known as the burden of proof.   There are two burdens of proof that you will apply in this case: preponderance of the evidence and clear and convincing evidence.

Illumina has the burden of proving indirect infringement of the Asserted Claims by inducing or contributing to the infringement by others and willful infringement by a preponderance of evidence.   When a party has the burden of proving any claim by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim is more probably true than not true. You should base your decision on all of the evidence, regardless of which party presented it.

Defendants have the burden of proving that the asserted claims are invalid by clear and convincing evidence.   When a party has the burden of proving any claim or defense by clear and convincing evidence, it means that the party must present evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions of the claim or defense are true. This is a higher standard of proof than proof by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt, which is the burden of proof in a criminal case.

**G.     What is Evidence**

The evidence you are to consider in deciding what the facts are consists of:

1. the sworn testimony of any witness;

2. the exhibits that are admitted into evidence;

3. any facts to which the lawyers have agreed; and

4. any facts that I may instruct you to accept as proved.

### H.      What is Not Evidence

In reaching your verdict, you may consider only the testimony and exhibits received into evidence.  Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

(1) Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses. What they may say in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that is excluded or stricken, or that you are instructed to disregard, is not evidence and must not be considered. In addition some evidence may be received only for a limited purpose; when I instruct you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

(4) Anything you may see or hear when the court was not in session is not evidence.  You are to decide the case solely on the evidence received at the trial.

## I.      Evidence for Limited Purpose

Some evidence may be admitted only for a limited purpose.

When I instruct you that an item of evidence has been admitted only for a limited purpose, you must consider it only for that limited purpose and not for any other purpose.

**J.      Direct and Circumstantial Evidence**

Evidence may be direct or circumstantial.

Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.

Circumstantial evidence is proof of one or more facts from which you could find another fact. By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night.  However, other evidence, such as a turned on garden hose, may provide a different explanation for the presence of water on the sidewalk.  Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience, and common sense.

You should consider both kinds of evidence.

The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

**PRELIMINARY JURY INSTRUCTIONS**                                  **Case No. 3:19-cv-03770-WHO**
**Case No. 3:20-cv-01465-WHO**

### K.     Ruling on Objections

There are rules of evidence that control what can be received into evidence.  When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object.  If I overrule the objection, the question may be answered or the exhibit received.  If I sustain the objection, the question cannot be answered, and the exhibit cannot be received.  Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore that evidence.  That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

### L.      Foreign Language Testimony

You may hear testimony of a witness who will be testifying in Mandarin.  Witnesses who do not speak English or are more proficient in another language testify through an official court interpreter.  Although some of you may know Mandarin, it is important that all jurors consider the same evidence.  Therefore, you must accept the interpreter's translation of the witness's testimony.  You must disregard any different meaning.

You must not make any assumptions about a witness or a party based solely on the use of an interpreter to assist that witness or party.

**M.    Credibility of Witnesses**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case, if any;

(5) the witness's bias or prejudice, if any;

(6) whether other evidence contradicted the witness's testimony;

(7) the reasonableness of the witness's testimony in light of all the evidence; and

(8) any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said.  Sometimes different witnesses will give different versions of what happened.  People often forget things or make mistakes in what they remember.  Also, two people may see the same event but remember it differently.  You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said.  On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify.  What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

### N.      Implicit Bias

We all have feelings, assumptions, perceptions, fears, and stereotypes about others. Some biases we are aware of, and others we might not be fully aware of, which is why they are called implicit or unconscious biases. No matter how unbiased we think we are, our brains are hard-wired to make unconscious decisions. We look at others and filter what they say through our own personal experience and background. Because we all do this, we often see life and evaluate evidence in a way that tends to favor people who are like ourselves, or who have had life experiences like our own. We can also have biases about people like ourselves. One common example is the automatic association of male with career and female with family. Bias can affect our thoughts, how we remember what we see and hear, whom we believe or disbelieve, and how we make important decisions.

As jurors, you are being asked to make an important decision in the case. You must one, take the time you need to reflect carefully and thoughtfully about the evidence.

Two, think about why you are making the decision you are making and examine it for bias. Reconsider your first impressions of the people and the evidence in this case. If the people involved in this case were from different backgrounds, for example, richer or poorer, more or less educated, older or younger, or of a different gender, gender identity, race, religion or sexual orientation, would you still view them, and the evidence, the same way?

Three, listen to one another. You must carefully evaluate the evidence and resist, and help each other resist, any urge to reach a verdict influenced by bias for or against any party or witness. Each of you have different backgrounds and will be viewing this case in light of your own insights, assumptions and biases. Listening to different perspectives may help you to better identify the possible effects these hidden biases may have on decision making.

And four, resist jumping to conclusions based on personal likes or dislikes, generalizations, gut feelings, prejudices, sympathies, stereotypes, or unconscious biases.

The law demands that you make a fair decision based solely on the evidence, your individual evaluations of that evidence, your reason and common sense, and these instructions.

### O.   Conduct of Jury

I will now say a few words about your conduct as jurors.

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty.  Thus, until the end of the case or unless I tell you otherwise:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it.  This includes discussing the case in person, in writing, by phone, tablet, or computer, or any other electronic means, via email, text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media.  This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case, and how long you expect the trial to last.  But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and report the contact to the court.

Because you will receive all the evidence and legal instruction you properly may consider to return a verdict:  do not read, watch or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.  Do not visit or view any place discussed in this case, and do not use the Internet or any other resource to search for or view any place discussed during the trial.  Also, do not do any research about this case, the law, or the people involved—including the

parties, the witnesses or the lawyers—until you have been excused as jurors.  If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court.  Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process.  If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process.  Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial.  Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over.  If any juror is exposed to any outside information, please notify the court immediately.

**PRELIMINARY JURY INSTRUCTIONS**

**Case No. 3:19-cv-03770-WHO**
**Case No. 3:20-cv-01465-WHO**

**P.      Transcripts and Taking Notes**

I urge you to pay close attention to the trial testimony as it is given.  During deliberations you will not have a transcript of the trial testimony.

If you wish, you may take notes to help you remember the evidence.  If you do take notes, please keep them to yourself until you go to the jury room to decide the case.  Do not let notetaking distract you.  When you leave, your notes should be left in the jury room.  No one will read your notes.

Whether or not you take notes, you should rely on your own memory of the evidence.  Notes are only to assist your memory.  You should not be overly influenced by your notes or those of other jurors.

### Q.     Outline of Trial

The trial will now begin.  First, each side may make an opening statement. An opening statement is not evidence.  It is simply an outline to help you understand what that party expects the evidence will show.

The presentation of evidence will then begin.  Witnesses will take the witness stand and the documents will be offered and admitted into evidence.  There are two standards of proof that you will apply to the evidence, depending on the issue you are deciding.  On some issues, you must decide whether something is more likely true than not.  On other issues you must use a higher standard and decide whether it is highly probable that something is true.   These are the "preponderance" and "clear and convincing" standards I described a moment ago.

Illumina will present its evidence on its contention concerning damages from past infringement of the Asserted Claims of the '537 Patent, '200 Patent, '025 Patent, '973 Patent, and '444 Patent and that Defendants' infringement has been willful.  These witnesses will be questioned by Illumina's counsel in what is called direct examination.  After the direct examination of a witness is completed, the opposing side has an opportunity to cross-examine the witness.  Finally, Illumina's counsel has the opportunity to question the witness one more time in what is called redirect examination. To persuade you that infringement was willful, Illumina must prove that it is more likely true than not true that the infringement was willful.

After Illumina has presented its witnesses, Defendants will call their witnesses, who will also be examined and subject to cross-examination and redirect.  Defendants will present its evidence that the Asserted Claims of the '537 Patent, '200 Patent, '025 Patent, '973 Patent, and '444 Patent are invalid.  To prove invalidity of any claim, BGI must persuade you that it is highly probable that the claim is invalid.   In addition to presenting its evidence of invalidity, BGI will put on evidence responding to Illumina's damages and willfulness contentions.

Illumina will then return and will put on evidence responding to Defendants' contention that the claims of the '537 Patent, '200 Patent, '025 Patent, '973 Patent, and '444 Patent are invalid. Illumina will also have the option to put on what is referred to as "rebuttal" evidence to any evidence offered by Defendants of non-infringement or lack of willfulness.

1   Finally, Defendants will have the option to put on "rebuttal" evidence to any evidence offered
2   by Illumina on the validity of the asserted claims of the '537 Patent, '200 Patent, '025 Patent, '973
3   Patent, and '444 Patent.

4   Because the evidence is introduced piecemeal, you need to keep an open mind as the evidence
5   comes in and wait for all the evidence before you make any decisions.  In other words, you should
6   keep an open mind throughout the entire trial.

7   The parties may present the testimony of a witness by reading from his or her deposition
8   transcript or playing a videotape of the witness's deposition testimony.  A deposition is the sworn
9   testimony of a witness taken before trial and is entitled to the same consideration as if the witness
10  had testified at trial.

11  After the evidence has been presented, the attorneys will make closing arguments and I will
12  give you final instructions on the law that applies to the case. Closing arguments are not evidence.
13  After the closing arguments and instructions, you will then decide the case.

**PRELIMINARY JURY INSTRUCTIONS**                                    **Case No. 3:19-cv-03770-WHO**
                                                                     **Case No. 3:20-cv-01465-WHO**