| | |
|---|---|
| David Bilsker (Bar No. 152383) | Anne S. Toker (admitted *pro hac vice*) |
| davidbilsker@quinnemanuel.com | annetoker@quinnemanuel.com |
| David A. Perlson (Bar No. 209502) | Robert B. Wilson (admitted *pro hac vice*) |
| davidperlson@quinnemanuel.com | robertwilson@quinnemanuel.com |
| QUINN EMANUEL URQUHART & SULLIVAN, LLP | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| 50 California Street, 22nd Floor | 51 Madison Avenue, 22nd Floor |
| San Francisco, CA 94111 | New York, New York 10010 |
| (415) 875-6600 Tel. | (212) 849-7000 Tel. |
| (415) 875-6700 Fax | (212) 849-7100 Fax |
| | |
| Kevin P.B. Johnson (Bar No. 177129) | Derek L. Shaffer (admitted pro hac vice) |
| kevinjohnson@quinnemanuel.com | derekshaffer@quinnemanuel.com |
| QUINN EMANUEL URQUHART & SULLIVAN, LLP | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| 555 Twin Dolphin Drive, 5th Floor | 1300 I Street NW, Suite 900 |
| Redwood Shores, CA 94065 | Washington, D.C. 20005 |
| (650) 801-5000 Tel. | (202) 538-8000 Tel. |
| (650) 801-5100 Fax | (202) 538-8100 Fax |

Attorneys for Defendants and Counterclaim-Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ILLUMINA, INC. and ILLUMINA CAMBRIDGE LTD., <br><br> Plaintiffs, <br><br> v. <br><br> BGI GENOMICS CO., LTD., BGI AMERICAS CORP, MGI TECH CO., LTD., MGI AMERICAS INC., and COMPLETE GENOMICS INC., <br><br> Defendants. | Case No. 3:19-cv-03770-WHO (TSH) <br> Case No. 3:20-cv-01465-WHO (TSH) <br><br> **DEFENDANTS' RESPONSE TO PLAINTIFFS' POSITION ON DISPUTES CONCERNING DEPOSITION DESIGNATIONS OF WITNESSES BGI PLANS TO CALL** |
| COMPLETE GENOMICS INC., <br><br> Counterclaim-Plaintiff, <br> v. <br><br> ILLUMINA, INC. and ILLUMINA CAMBRIDGE LTD., <br><br> Counterclaim-Defendants. | |

Defendants Complete Genomics, Inc., BGI Genomics Co. Ltd., BGI Americas Corp., MGI Tech Co., Ltd., and MGI Americas, Inc. (collectively "CGI") hereby respond to Plaintiffs' statement regarding their objections to BGI's deposition designations. *See* Dkt. No. 499.[1]

## I. CGI'S NARROWED DESIGNATIONS OF INVENTOR TESTIMONY DO NOT VIOLATE THE COURT'S ORDER REGARDING PLAINTIFFS' MIL NO. 2 OR RETRACE THE INVENTORS' PATH

Throughout these cases, Plaintiffs have employed various tactics to avoid or exclude testimony from the inventors of the asserted patents. For example, in August 2020, Plaintiffs refused to produce the inventors for deposition. *See* Dkt. No. 230 at 2. CGI was forced to move to compel these depositions—which the Court granted. *Id.* at 1-3. Now, Plaintiffs seek to wield the Court's order regarding their MIL No. 2 to improperly exclude deposition testimony from the inventors relating to the prior art or the state of the art at the time of the invention.

After the Court's pretrial rulings, CGI de-designated testimony that were excluded by the Court's order. Plaintiffs then made blanket objections based on their MIL No. 2 or "Retraces Path" to large portions of the inventor testimony that remained designated by CGI. Illumina even seeks to exclude testimony of a ***non-inventor***, Dr. Lea Pickering. But none of the objected-to testimony was properly excluded by the Court's pretrial rulings and, in fact, none of the testimony "insinuate[s] that the inventors (a) knew about and relied upon the Zavgorodny and Kovacs references and (b) are now perjuring themselves to 'cover up' that reliance to conceal their path to the invention." Dkt. No. 499 at 1.

Illumina first points to various testimony from the inventors regarding the use of the Zavgorodny references at Solexa. *See* Dkt. No. 499 at 1-2. Illumina's selective quotation omits the broader context, including the inventors' answers, which show that the Zavgorodny references were art that a POSA would look to in synthesizing the 3'-O azidomethyl and that a POSA reading those references would understand that azidomethyl was within the scope of that art. For example, Dr. Liu testified—just prior to the excerpt of a question quoted by Plaintiffs—that the Zavgorodny reference was interesting because it was the same chemistry that the inventors used:

---

[1] All citations to the docket refer to Case No. 3:19-cv-3770-WHO.

> Q. And what was your reaction, having read it sometime after you filed your patent application?
>
> A. Interesting.
>
> . . . .
>
> Q. Well, so any chemistry you see you find interesting?
>
> A. Well, this one is lesser interesting. It is a chemistry that we – we did. Right?
>
> Q. What do you mean, "It's a chemistry that we did"?
>
> A. You know, a chemistry to introduce that functioning group.
>
> Q. So you did that chemistry that Zavgorodny describes to introduce the azidomethyl functional group?
>
> . . . .
>
> A. Right.

Liu Tr. at 192:8-193:7.[2] Notably the questioning was specifically focused on ***after*** the patent application was filed, and thus after the alleged inventive acts had occurred.

This testimony and that like it, in its full context, does not improperly suggest that the inventors relied on or copied from Zavgorodny in coming up with the claimed inventions. Instead, it shows the state of the art as well as how a POSA would understand the Zavgorodny references. As such, this inventor testimony is relevant to obviousness. *See, e.g.*, *Neupak, Inc. v. Ideal Mfg. & Sales Corp.*, 41 F. App'x 435, 440 (Fed. Cir. 2002) ("The inventors' testimony was relevant to whether the inventions would have been obvious to a person of ordinary skill in the art.").

Much of the testimony Illumina objected to does not have any of these purported defects. For example, Dr. Milton testified about the Staudinger reaction and how it was taught to chemists:

> [Q.] When you say, "That's the [sort of] classic reaction," the "that" you're referring to is the thing in the parentheses and that's the classic Staudinger reaction?
>
> A. I think what's happening is triphenylphosphine . . . itself is pretty nasty stinky stuff that reacts in water and moisture and stuff. So you react that with the azide and those two things kind of click together. And then you see it says "aqueous pyridine," I think, he just let that

---

[2] Regarding the question quoted from Dr. Brennan's deposition, the "you" in the question refers to Dr. Brennan as a POSA, not specifically to Solexa.

> just warm up and then the water is the thing that makes it all decompose to give you the final product.  But that is, I think, essentially, is the classical Staudinger reaction as it's would probably be taught initially.

Milton Tr. at 47:3-19.  Dr. Brennan likewise testified about the state of the art regarding the removal of azidomethyl as described in Zavgorodny, including what was generally known in the field:

> Q. And then it was known that the amino group would in aqueous conditions, would spontaneously I don't what word you want break up; right?
>
> A. I yes.
>
> Q. And if you look at the last sentence of the Zavgorodny paper, Exhibit Number 72, it says: "The azidomethyl group is of special interest, since it can be removed under very specific and mild conditions, this with triphenylphosphine in aqueous pyridine at 20 degrees C."  Do you see that?
>
> A. Yes.
>
> Q. And the triphenylphosphine is a phosphine; right?
>
> A. Yes.

Brennan Tr. at 83:1-15.  As another example, Dr. Liu testified regarding a POSA's reasonable expectations of success in trying a blocking group that can be removed from a 3'-OH nucleoside under mild conditions as a blocking group on a nucleotide:

> Q. So if you saw a reference that said there was a three prime-OH nucleoside blocking group that can be removed from that three prime-OH nucleoside under mild conditions . . . would that lead you to think that maybe you should try that blocking group on the nucleotide to see if it would also [be removable under mild] conditions?
>
> . . . .
>
> A. Yes.

Liu Tr. at 132:18-8.

The additional testimony cited by Illumina, in its full context, shows that a POSA at the relevant time would have looked to the Zavgorodny and Kovacs references, would be motivated to combine such references, would have an expectation of success in doing so, and would have understood the full scope of those references.  *See* Dkt. No. 499 at 2-3.  This is classic obviousness

evidence. Such testimony has nothing to do with intent to deceive, wrongful conduct before the PTO, or the inventors' path to the invention and should not be excluded under the Court's order on MIL #2 or for any other reason.

Plaintiffs' overlapping objections regarding the "path of the inventors" are similarly baseless. For instance, the testimony from Dr. Milton that Illumina quotes (*id.* at 3-4) is directly relevant to the one of the central issues in the invalidity challenge: the Staudinger reaction. Dr. Milton's testimony is relevant to the state of the art, including that the use of the Staudinger reaction was well-known. Plaintiffs should not be allowed to exclude this testimony simply because he used the word "obvious" as neither the question nor the answer was directed to the ultimate legal issue of obviousness. Dr. Milton was testifying about what steps a POSA would have found readily apparent at the time. This also holds true for the other testimony in Plaintiffs' brief. *See id.* at 5.

Further, Plaintiffs' argument that inventor testimony should be excluded based on leading questions should rejected. First, to the extent Dr. Milton is an inventor of the asserted patents, he is identified with Plaintiffs. Fed. R. Evid. 611(c)(2). Second, even if the witness were not adverse, the form of the objected-to questions did not suggest the answer and are thus not leading.

## II.     CGI'S DESIGNATIONS DO NOT CALL FOR EXPERT OPINION FROM LAY WITNESSES

Illumina raises yet another objection to the inventor testimony designated by Defendants on the grounds that it constitutes expert opinion from lay witnesses. Not so. The examples Illumina cites reveal the lack of merit of this objection, as Dr. Brennan was asked to describe his alleged invention. It goes without saying that an inventor has personal knowledge of his own invention. It is difficult to conceive of how asking an inventor about his or her invention is a "gotcha" or a "trap," as Illumina argues.

As another example, Illumina objected to the following exchange as "improper opinion":

> Q: Let me see if I can refresh your memory. Does it sound familiar to you that . . . the Staudinger reaction is using phosphines to reduce azide groups to –
>
> A: That sounds familiar.
>
> Q: To amino groups?

   Q: Does that sound familiar to you?

   A: Yes.

Brennan Tr. at 82:2-9; 11-13.

But asking whether or not Dr. Brennan is "familiar" with a chemical reaction to provide foundation for subsequent questioning does not call for an opinion. It calls for personal knowledge, and Dr. Brennan admitted to having this knowledge.

In sum, Plaintiffs' renewed efforts to keep inventor testimony out of the case should be rejected. The Court's order did not sweep so broadly. Plaintiffs should not be allowed to deprive the jury of inventor testimony—new evidence that has not previously been presented to any factfinder and that is directly relevant to the issues in this case— just because it may be unfavorable. For the reasons set forth above, CGI respectfully requests that the Court overrule Plaintiffs' objections to CGI's deposition designations.

## III.   CGI'S DESIGNATIONS ARE NOT ARGUMENTATIVE

Illumina asks the Court to make a blanket ruling sustaining all of its "argumentative" objections, based on two select passages from each of two witnesses. Far from argumentative, the questions posed by CGI's counsel in these cherry-picked passages are proper questions posed to challenging witnesses. Additionally, the Jena Bioscience product brochure, which Illumina calls "self-serving," is relevant and reliable. Illumina makes no allegations that CGI influenced Jena in any way, and if supplying azidomethyl nucleotides "align[s]" Jena and CGI, then Jena and Illumina are "aligned" as well. Dr. Brennan himself ordered azidomethyl nucleotides from Jena Bioscience during his work at Solexa. *See, e.g.*, ILMNBGI0514587 (Jena Bioscience Quotation to Solexa Limited, addressed to Dr. Joseph Brennan). Questioning Dr. Brennan about the products he purchased from Jena is anything but argumentative and use of the relevant product brochure to elicit this testimony is proper. Illumina's argumentative objections should be overruled.

| | |
|---|---|
| Dated: November 11, 2021 | Respectfully submitted, |
| | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| | By     /s/ *Andrew Naravage* |
| |        Andrew Naravage |
| | Attorneys for Defendants BGI Genomics, Co. Ltd., BGI Americas Corp. MGI Tech Co., Ltd., MGI Americas, Inc., and Complete Genomics, Inc. |